**Revised November 23, 1998**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 98-60224
Summary Calendar

_____

SANDRA F. WALKER

                              Plaintiff - Appellant,

VERSUS

WAL-MART STORES, INC.

                              Defendant - Appellee.

_____

On Appeal from the United States District Court for the Southern
District of Mississippi
_____
November 18, 1998

Before REYNALDO G. GARZA, JOLLY, and WIENER, Circuit Judges.

PER CURIAM:


## I. FACTUAL AND PROCEDURAL BACKGROUND


In January of 1990, Sandra Walker ("Walker") was employed by
Wal-Mart Stores Inc. and was a member of the Wal-Mart Associates
Group Health Plan ("the Plan"), which provided Walker with
medical and dental benefits.  The Plan is governed by the
Employee Retirement Income Security Act ("ERISA").

Beginning January 18, 1990, through January 25, 1990, Walker
underwent dental treatment by Dr. Van R. Simmons, a dentist in

Mississippi. On January 7, 1992, Walker initiated a malpractice action in state court against Dr. Simmons for dental malpractice. She alleged that he propped her mouth open excessively, thus causing her to undergo three inpatient surgeries for repair of her right and left temporomandibular joints.

Walker's medical expenses totaled $41,598.59 and were paid by the Plan. On June 19, 1996, Walker agreed to release Dr. Simmons of all claims in exchange for a settlement agreement of $12,500.

On December 13, 1996, Walker instituted a declaratory judgment action in the Circuit Court of Pike County, Mississippi. Walker argued that she was entitled to the whole of the settlement proceeds received in the underlying malpractice action. On January 21, 1997, the Plan removed the case to federal court on the basis of federal question jurisdiction.

On March 31, 1998, the United States District Court for the Southern District of Mississippi granted the Plan's Motion for Summary Judgment and ordered the entirety of the $12,500 be paid to the Plan as reimbursement for its medical expenses. Walker appealed the lower court's decision.

## II. STANDARD OF REVIEW

In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115

(1989), the Supreme Court established that courts must apply a *de novo* standard of review in actions brought by ERISA plan participants who challenge the denial of benefits.  However, if the plan vests the plan administrator with discretionary authority to make eligibility determinations or construe the plan's terms, the appropriate standard of review is for abuse of discretion.  *Id*.

This Court has held *Bruch's* principles applicable not only to benefit determinations brought by plan participants, but also to plans' assertions of purported reimbursement and subrogation rights.  *Sunbeam-Oster Company, Inc. Group Benefits Plan for Salaried and Non-Bargaining Hourly Employees v. Whitehurst*, 102 F.3d 1368, 1373 (5th Cir. 1991).  In *Whitehurst*, we applied a *de novo* standard of review because the parties agreed that the administrator had not been vested with discretionary authority to interpret the Plan at the time of the plaintiff's injuries.  *Id*. Had we found that the administrator had possessed discretionary authority at the time of the injury, the appropriate standard of review would have been for abuse of discretion.

Like in *Whitehurst*, the Plan herein is asserting its reimbursement and subrogation rights over the plaintiff's monetary recoveries from the tortfeasor.  In this case, however, the issue on whether the administrator was vested with discretionary authority has not been settled and we must look at

3

the Plan's language to determine if any of its provisions vested the administrator with such authority.  The relevant provision, for determining this issue, reads as follows:

> The PLAN herein expressly gives the ADMINISTRATIVE COMMITTEE discretionary authority to resolve all questions concerning the administration, interpretation or application of the PLAN, including without limitation, discretionary authority to determine eligibility for benefits or to construe the terms of the PLAN in conducting the review of the appeal. . . .

This provision clearly vested the Administrative Committee with the discretionary authority to interpret the terms of the Plan, therefore, the proper standard of review in this case is for abuse of discretion.

### III. DISCUSSION

There are two issues presented in this case.  First, whether the Plan's language unambiguously speaks to this dispute and sufficiently provides for the distribution of settlement proceeds of the type paid in this case.  Second, whether the plaintiff's attorney is entitled to deduct his fees and expenses prior to the Plan being reimbursed under his own reimbursement contract with the plaintiff.

Walker's argument, for right of possession over the settlement money, is three-fold.  First, she argues that the Plan chose not to participate or finance the lawsuit and should therefore be barred from recovering any of the settlement money.

4

Second, Walker maintains that the language of the Plan never contemplated partial recovery by a participant nor did it ever consider the issue of attorneys' fees. Third, Walker contends that there is no proof that the settlement sum paid was a result of any malpractice by the tortfeasor and therefore the reimbursement provision does not apply.

The Plan argues that it is entitled to the right of subrogation and recovery of all amounts paid. The Plan points out that it expended $41,498.59 for Walker's medical treatment and that the plain language of the Plan gives it the right to recover benefits that it has previously paid to the extent of any payments resulting from settlement, regardless of how the parties chose to designate those payments.

The Plan asserts that the relevant provisions are unambiguous. Walker, however, claims that they are insufficient for determining the distribution of the settlement proceeds. The provisions read as follows:

> The PLAN shall have the right to reduce benefits
> otherwise payable by the PLAN or recover benefits
> previously paid by the PLAN to the extent of any and
> all of the following:
> A. Any payments resulting from a judgement or
>    settlement, or other payment or payments,
>    made or to be made by any person or persons
>    considered responsible for the condition
>    giving rise to the medical expense or by
>    their insurers, regardless of whether the
>    payment is designated as payment for such
>    damages including, but no limited [,] to pain
>    and/or suffering, loss of income, medical
>    benefits or any other specified damages; or
>    any other damages made or to be made by any

5

person . . .

Congress expressly intended for ERISA Plans to be "written in a manner calculated to be understood by the average plan participant," and need only be "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. Title 29 U.S.C. § 1022(a)(1). In light of this statute, we have previously held that ERISA plans should not be held to the same standard that an insurance contract purchased in an open market is held to. *Jones v. Georgia Pacific Corp.*, 90 F.3d 114, 116 (5th Cir. 1996). Such a contract is purposefully drafted with greater particularity because courts usually construe plan terms strictly in favor of the insured. ERISA, on the other hand, expressly guards against boilerplate language in its plans and we must therefore interpret ERISA plans' provisions as they are likely to be "understood by the average plan participant," consistent with ERISA's statutory drafting requirements.

We hold that the Plan's language is unambiguous and that the administrators' interpretation of the Plan did not constitute an abuse of discretion. We agree with the district court in holding that the "any and all" language plainly means the first dollar of recovery (any) and 100% recovery (all) of the funds received by the plaintiff in the settlement, up to full amount of the benefits paid. The Plan's unambiguous language does not include

6

a provision for reduction of its subrogation lien for payment of attorneys' fees or costs. Interpreting the provisions to provide for attorneys' fees and expenses would have been wholly improper by the district court. Furthermore, the fact that the provisions do not specifically mention attorneys' fees or set out detailed distribution procedures, does not constitute silence or ambiguity on behalf of the Plan. *Whitehurst*, 102 F.3d at 1375. This Court has firmly held that an ERISA plan should not be penalized for lack of technical precision or verbosity by labeling the Plan "silent" or "ambiguous" when it is simply using the direct language mandated by ERISA. *Id*.

## IV. CONCLUSION

In sum, we conclude that the administrator's interpretation of the plan was legally correct and that the language of the Plan's subrogation and reimbursement provisions are clear and unambiguous. Furthermore, in the absence of any expressly selected alternative standard, the Plan Priority norm vested the Plan with unconditional reimbursement for the full amount of the medical benefits paid to Walker. Therefore, her attorneys are not entitled to deduct their fees or expenses.

We find that there was no abuse of discretion by the Administrative Committee and AFFIRM the district court's decision

7

to grant the Plan's Motion for Summary Judgment.