**METRAHEALTH INSURANCE COMPANY, as successor claims administrator for the Louisiana Pacific Group Medical Expense Plan, Plaintiffs,**

v.

**Jimmy DRAKE and Glenda Drake, Defendants.**

**No. 1:96–CV–665.**

United States District Court, E.D. Texas, Beaumont Division.

Sept. 9, 1999.

Thomas P Roebuck, Jr., Bush Lewis & Roebuck, Beaumont, TX, for plaintiffs.

## MEMORANDUM OPINION

COBB, District Judge.

### I. FACTUAL AND PROCEDURAL BACKGROUND

A group medical expense plan brought suit to compel reimbursement from a covered individual. Glenda Drake injured her neck and back during a fall in a Wal-Mart store. Her medical expenses were covered by Louisiana Group Pacific Medical Expense Plan [the Plan]. Mrs. Drake was covered as a dependant under the health care plan of her husband, Jimmy Drake. Metrahealth, the plaintiff in this suit, is the successor claims administrator for the Plan.

The Drakes sued Wal-Mart and obtained a settlement. In the action now before the court, Metrahealth seeks reimbursement from the Drakes for the settlement proceeds they acquired from Wal-Mart. The medical plan contains provisions for subrogation and reimbursement where medical expenses arise from injuries caused by third-party tortfeasors. Where the Plan does not exercise its right of subrogation, it requires reimbursement if the covered individual recovers damages from the tortfeasor. Mr. Drake executed a reimbursement agreement acknowledging the receipt of benefits and promising to reimburse the medical expenses in accordance with the terms of the plan.

The Drakes filed suit against Wal-Mart for negligence and gross negligence. The action was filed in Hardin County district court and removed to federal court in the Eastern District of Texas. After reaching a partial settlement midway through a jury trial, the parties waived their right to a jury and agreed to try the issue of medical expenses before Magistrate Judge Wendell Radford. As a result of the accident, Mrs. Drake discovered that she had a preexisting spinal condition. The slip and fall injury aggravated her preexisting condition and surgery was required as a result of both the injury and preexisting condition. Judge Radford issued a Memorandum Order on August 3, 1994 allocating medical expenses between those resulting from the accident and those required by Mrs. Drake's preexisting condition. Final Judgment was entered on September 12.

The Plan did not exercise its right of subrogation. After the Drakes settled with Wal-Mart, the Plan demanded reimbursement of the medical expenses it had paid for Mrs. Drake. The Drakes refused the demand and Metrahealth filed this suit.

## II. DISCUSSION

The plan at issue is subject to the Employee Retirement Income Security Act of 1974. 29 U.S.C. § 1003(a) *et seq.* The court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. During a management conference held on May 29, 1997 the court requested further briefing on the central issues of the case. In conformity with that order Metrahealth submitted a brief to which Drake responded. Each brief relies on the same set of material facts to support the parties' arguments. Therefore, the briefs will be treated as cross motions for summary judgment. FED.R.CIV.PRO. 56.

The parties ask the court to determine how the settlement proceeds recovered from Wal–Mart should be distributed between them. Metrahealth claims the whole settlement in reimbursement for medical expenses. The Drakes seek to retain the settlement in its entirety. The material facts underlying this issue are not in dispute. Under Rule 56(c) [1] of the Federal Rules of Civil Procedure, this court is in a position to rule as a matter of law. *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Drakes proffer several arguments absolving them of the obligation to reimburse any amount to the plan. First, they argue that since Jimmy and not Glenda signed the reimbursement agreement, Glenda has no obligation to reimburse the Plan. Defendants argue that under the property laws of Texas, the settlement recovery is the exclusive property of Mrs. Drake and Mr. Drake had no legal right to assign an interest to Metrahealth. *See* TEX. CONST. art. XVI, § 15; TEX.FAM. CODE § 3.202 (Vernon 1993).

The language of the reimbursement agreement reads "In Accordance with the Plan's Provisions set forth in the Plan description, I agree to reimburse the Plan to the extent of any recovery of said expenses as a result of any legal action or settlement or otherwise." This language does not condition reimbursement on the signee recovering for expenses; it is a promise to reimburse if anyone recovers for the covered injuries.

The court finds that Mr. Drake is a proper party to this suit, that he promised to reimburse Metrahealth in the event of a recovery, and that there has been a recovery for the expenses covered by this agreement. Mr. Drake is obligated to reimburse Metrahealth regardless of whether Mrs. Drake allows him access to her Wal–Mart money.

However, this court further finds that Mrs. Drake has ratified her husband's promise and assumed the obligation of reimbursement by accepting medical services paid for by Metrahealth on a continuing basis. The Drakes have joint and several liability for any reimbursement to which Metrahealth may be entitled.[2]

Drake next makes a confused argument for a "Make Whole" rule of reimbursement, misciting *Barnes v. Independent Automobile Dealers Association of California Health and Welfare Benefit Plan,* 64 F.3d 1389 (9th Cir.1995) in support. Defendants assert that ERISA does not preempt state doctrines of subrogation and that Mrs. Drake must be fully compensated for her injuries before Metrahealth can recover anything. Unfortunately, this argument omitted addressing

---

1. Rule 56(c) provides in pertinent part:

    The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

2. As this court finds that Mrs. Drake ratified the reimbursement agreement, this court need not decide whether Defendants' argument from Texas property law would prevail in light of the Supreme Court's recent holding that ERISA preempts Louisiana community property law. *See Boggs v. Boggs,* 520 U.S. 833, 117 S.Ct. 1754, 1762, 138 L.Ed.2d 45 (1997).

*Sunbeam–Oster v. Whitehurst,* 102 F.3d 1368, (5th Cir.1996) where the Fifth Circuit specifically cites *Barnes* in holding that ERISA's preemption of state subrogation doctrines is well settled. *Id.* at 1374. *Whitehurst* also contains an extended discussion, albeit in dicta, disapproving of the Make Whole rule in this context:

> we have serious doubts whether we would ever approve or adopt the Make Whole rule as this circuit's default rule for the priority of · recovery in reimbursement or subrogation between an ERISA plan and its participant or beneficiary. *Id.* at 1378. ·

Contrasted with this counsel from the Fifth Circuit, Defendant's argument from state doctrine for a Make Whole rule falls flat. State doctrines of subrogation are preempted by ERISA. *Id.* at 1374. The rule for reimbursement is neither borrowed from state doctrine nor supplied by a federal common law default rule. The rule of reimbursement is provided by the language of the plan. *See id.* at 1375–6.

■ Therefore, the language of the plan governs the allocation of the funds in dispute. In this case, this plan does vest the plan administrator with discretion to interpret the terms of the plan.[3] As such, a court will reverse an administrator's decision only for abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). *Bruch*'s principles are applicable to benefit determinations brought by plan participants as well as to plan's assertions of purported reimbursement and subrogation rights. *Whitehurst,* 102 F.3d at 1373.

Accordingly, this court must decide whether the Plan's language unambiguously provides a rule for determining the allo-

cation of the settlement recovery. *Walker v. Wal–Mart Stores, Inc.,* 159 F.3d 938, 939 (5th Cir.1998). Finding that the language of the Plan is both unambiguous and broad enough to encompass the dispute herein, this court holds that the plain language of the Plan mandates that, the Plan must be reimbursed dollar for dollar prior to any distribution of settlement proceeds to either Mrs. Drake or her attorney.

### A. The Plan Language is Unambiguous

■ It is well settled that ERISA plans' provisions must be interpreted as they are likely to be "understood by the average plan participant." *Walker,* 159 F.3d at 940 (citing 29 U.S.C. § 1022(a)(1)). Congress expressly provided that ERISA plans be "written in a manner calculated to be understood by the average plan participant," and need only be "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." *Id.* (citing 29 U.S.C. § 1022(a)(1)). The Fifth Circuit explicitly recognized in *Whitehurst* that ERISA insists that plans "be couched in ordinary conversational terms, understandable by the average reasonable employee, and not in verbose 'legalese' or 'insurance speak.'" 102 F.3d at 1370; *see also Jones v. Georgia Pac. Corp.,* 90 F.3d 114, 116 (5th Cir.1996) (quoting *Todd v. AIG Life Ins. Co.,* 47 F.3d 1448, 1452 n. 1 (5th Cir.1995)) (noting that courts must interpret ERISA "in an ordinary and popular sense as would a person of average intelligence and experience").

■ Under this standard the Plan is neither silent nor ambiguous. The Plan provides under the heading "Acts of Third Parties" that "[i]f the individual or his representative receives any recovery *with*

---

3. The plan provides in pertinent part:

In carrying out their respective responsibilities under the Plan, the Plan Administrator and other Plan fiduciaries shall have *discretionary authority* to interpret the terms of the Plan and to determine eligibility for and entitlement to plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

Plan at Pg. 39 (emphasis added).

*respect to such injuries* as a result of a claim or claims against any other party ... whether through judgment, settlement or otherwise, the Plan shall be reimbursed from such recovery the amount of benefit payments for covered expenses by the Plan." (Plan at p. 31 emphasis added) A laymen audience would undoubtedly read this to require damages recovered from a third party to be paid to Metrahealth if Metrahealth had already paid the Drakes' medical expenses. Nonetheless, a laymen would *not* read this to allow the Plan to receive a windfall by being reimbursed for covering expenses for which they were already contractually obligated to pay. Thus, the plain language reading of the plan indicates that, in the event of a recovery from a third party tortfeasor, Metrahealth must be reimbursed for the medical expenses caused by the accident. However, Metrahealth is alone responsible for medical expenses related to any preexisting conditions which happened to go undiscovered until the accident.

Judge Radford in Mrs. Drake's original suit against the third party tortfeasor, Wal–Mart, allocated the recovery between medical expenses caused by the accident and those due to the preexisting condition. The fact that Judge Radford has ruled on this aspect of the suit raises the matter of issue preclusion.

### B. Issue Preclusion

■■■■ Issue preclusion, formerly known as collateral estoppel, promotes the interests of judicial economy by treating certain issues of fact or law that are validly and necessarily determined between two parties as final and conclusive. *U.S. v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994). Issue preclusion applies "if another court has already furnished a trustworthy determination of a given issue of fact or law, [because] a party that has already litigated that issue should not be allowed to attack that determination in a second action." *Id.* District courts have broad discretion in determining when issue pre-

clusion should be applied to preclude relitigation of matters that have already been decided by other courts. *Copeland v. Merrill Lynch*, 47 F.3d 1415, 1423 (5th Cir.1995).

■■■■ In order for issue preclusion to apply, four elements must be met. *Shanbaum*, 10 F.3d at 311. (citing *Universal American Barge Corp. v. J–Chem, Inc.*, 946 F.2d 1131, 1136 (5th Cir.1991)). First, the issue at stake must be identical to the one involved in the prior action. *Id.* Second, the issue must have been actually litigated in the prior action. *Id.* Third, the determination of the issue in the prior action must have been a part of the judgment in that earlier action. *Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925, 932 (5th Cir.1999). Fourth, there must be no special circumstances that would render issue preclusion inappropriate or unfair. *Shanbaum*, 10 F.3d at 311.

Under this standard the issue of which medical expenses were recovered from the third party tortfeasor has been decided and thus precluded from relitigation by the order from Judge Radford. All the elements for issue preclusion have been met. First of all, the issue at stake in both suits is identical. The issue in the original suit was the proper allocation of medical expenses between the injury and the preexisting condition. One of the issues in this suit is the allocation of medical expenses between the injury and the preexisting condition. This exact issue was litigated before Judge Radford and, in fact, was the only issue litigated due to the partial settlement. This issue was absolutely necessary to the final determination of that suit. Therefore, issue preclusion applies in this suit with respect to the issue of the amount of medical expenses used to treat Mrs. Drake's preexisting medical condition.

■■■■ Metrahealth has argued that they are not bound by Judge Radford's Memorandum Order because they were not a party to that suit. Generally, it is

true that issue preclusion cannot apply against nonparties. *See Terrell v. DeConna,* 877 F.2d 1267, 1270 (5th Cir.1989) (stating "[t]he imposition of a preclusive bar against a non-party to the original adjudication is limited for obvious reasons: a non-party has had no day in court"). However, there are exceptions to this general rule. Courts should bind nonparties to issues which have been conclusively settled in previous suits when the nonparties interests were adequately represented in that suit. *Freeman v. Lester Coggins Trucking Inc.,* 771 F.2d 860, 864 (5th Cir. 1985) (quoting *Southwest Airlines v. Texas Int'l Airlines,* 546 F.2d 84, 95 (5th Cir. 1977). Moreover, "a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his 'virtual representative.'" *Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1124 (5th Cir.1987) (citing *Aerojet–General Corp. v. Askew,* 511 F.2d 710, 719 (5th Cir.1975). The determination of whether a party's interests were "virtually" or adequately represented in a previous suit is one of fact to be decided by the court. *Id.*

■ Due to the fact intensive nature of virtual representation, there is no clear test to use in determining whether or not it applies. *Tyus v. Schoemehl,* 93 F.3d 449, 455 (8th Cir.1996). There are, however, several factors courts use in making their determinations. *Id.* These factors include: identity of interests between the two parties, participation in the prior suit, acquiescence to the prior suit, and whether the present party deliberately avoided the effects of the prior suit. *Id.*

■ After applying these factors to the case at bar, it becomes apparent that Metrahealth's interests were adequately represented in *Drake v. Wal–Mart* by the Drakes. To begin with, Metrahealth ac-

quiesced in the prior judgment by not asserting its right of intervention which it maintained at all times. Although this factor alone is not determinative in finding virtual representation, *see e.g., United States v. City of Monroe,* 962 F.Supp. 1501, 1510 (M.D.Ga.1997), *rev'd on other grounds* by 522 U.S. 34, 118 S.Ct. 400, 139 L.Ed.2d 339 (1997), in this case it does operate in favor of issue preclusion. In addition, Metrahealth and Drake had identical interests in the suit between Drake and Wal–Mart. In that suit, Drake sued Wal–Mart for injuries she sustained when she fell in a Wal–Mart store. Drake tried to establish that Wal–Mart was responsible for paying all of her medical expenses. Wal–Mart, however, was successfully in convincing Judge Radford that many of Drake's injuries were the result of a preexisting condition in Drake's back.[4] If Metrahealth had been a party to that suit, Metrahealth would have argued, just like Drake did, that Wal–Mart was responsible for paying for all of Drake's medical expenses. At that time, it was in the best interests of both Drake and Metrahealth to try to prove that very few of Drake's injuries were the result of a preexisting condition. This position would have benefitted Metrahealth because Metrahealth was already responsible under the Plan for paying any of Mrs. Drake's preexisting conditions. Furthermore, Drake tried to establish that most of her medical expenses were the result of the fall in Wal–Mart to maximize her recovery against Wal–Mart. Therefore, Metrahealth's interests were adequately represented in the prior suit and issue preclusion applies to prevent Metrahealth from relitigating the issue of the extent of Drake's preexisting medical condition.

### C. The Bottom Line

The Plan covers unforeseen risks. The subrogation provision is to recover ex-

---

4. By establishing this, Wal–Mart avoided liability for Drake's preexisting condition. *See Dallas Ry. & Terminal Co. v. Ector,* 131 Tex. 505, 116 S.W.2d 683, 685 (1938) (holding that a plaintiff in a personal injury suit who has a preexisting condition is entitled to recover damages only to the extent that her injuries were aggravated by the incident made the basis of the suit).

penses where costs arise not from chance but from malfeasance. Where one covered by the plan succeeds in extracting payment from the responsible party, the Plan seeks reimbursement up to the amount of expenses.

Where an injured party succeeds in extracting money in excess of the amount of medical expenses, the Plan does not have an interest in the excess. The Plan has a creditor-like, rather than an ownership interest in the award or settlement. In other words, the plan cannot benefit from a plaintiff's windfall.

Here, the Drakes have alleged that part of the $36,000 in medical expenses are due to preexisting conditions rather than being attributable to the accident. Metrahealth would be responsible for covering the treatment of those conditions. These allegations have been litigated and resolved by Judge Radford. Judge Radford concluded that only $8,772.65 of Drake's medical expenses were the result of her fall at Wal–Mart. Of this amount, Metrahealth paid $7,044.45. Metrahealth cannot appropriate plaintiff's windfall as their own. They may not extract funds from Drake to pay for treatments it was contractually obligated to cover. Metrahealth is, however, entitled to recover the $7,044.45 which is directly attributable to Drake's recovery from Wal–Mart. Additionally, although the issue was not briefed by the parties, it is an equitable solution to require the Drake's counsel to reimburse the Plan in the same proportion for which he recovered his fees under the suit with Wal–Mart.

## III. CONCLUSION

The Plan is responsible for covering all medical expenses which are the result of preexisting medical conditions. Mrs. Drake's medical expenses in the amount of $36,000 constitute expenses for both preexisting conditions and injuries caused by a third party tortfeasor. Judge Radford's Memorandum Opinion addressed what amount of the medical expenses were the result of the actions of the third party tortfeasor. Accordingly, issue preclusion bars relitigation of this exact issue. Thus, Drake must reimburse the Plan in the amount of $7,044.45—the exact amount the Plan paid for medical expenses which are attributable to the third party tortfeasor.

It is therefore ORDERED that Judgment is granted in the amount of $7,044.45.