**Vernon DEAR, Plaintiff,**

v.

**The UNION CENTRAL LIFE INSURANCE COMPANY, Defendant.**

**Cause No. SA–08–CA–194–OG.**

United States District Court,
W.D. Texas,
San Antonio Division.

Aug. 28, 2008.

Richard E. Tinsman, Tinsman & Sciano, Inc., San Antonio, TX, for Plaintiff.

Andrew C. Whitaker, Figari & Davenport, L.L.P., Dallas, TX, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ORLANDO L. GARCIA, District Judge.

Before the Court is defendant's motion for summary judgment. (Docket no. 5.) For the reasons set out below, the motion will be granted.

Plaintiff Vernon Dear was employed by G & A Transportation, Inc. In 2002, G & A purchased a group accident policy from defendant Union Central Life Insurance Company. G & A purchased the plan to cover employees injured on the job. G & A selected coverage and benefit options, and calculated and paid all of the premiums for its employees, including Dear. All employees were automatically covered under the plan during their employment with G & A. Union Central provided G & A with copies of the Group Insurance Certificate for distribution to employees covered by the Group Policy.

In February 2006, Dear was involved in an on-the-job accident, and he promptly sought benefits under G & A's insurance plan. Over the ensuing two-year period, Union Central paid at least $127,998.01 to or for the benefit of Dear. Dear ultimately settled his claims with the third-party tortfeasor for $700,000. Dear filed the present action seeking to reduce or eliminate Union Central's subrogation lien.

### G & A's group policy is an ERISA plan

■ Dear argues that the plan is not an ERISA plan. On the contrary, the Court concludes that the plan is governed by ERISA. For the plan to be governed by ERISA, the Court must find that a plan "(1) exists; (2) falls outside the safe—harbor provisions established by the Department of Labor; and (3) satisfies the primary elements of an ERISA 'employee benefit plan'—establishment or maintenance by an employer intending to benefit employees." *Meredith v. Time Ins. Co.,* 980 F.2d 352, 355 (5th Cir.1993). "If any part of the inquiry is answered in the negative, the submission is not an ERISA plan." *Id.* Here, all of these criteria are met.

First, a plan existed. In determining whether a plan exists, the Court must determine whether a reasonable person could ascertain the intended benefits, beneficiaries, sources of financing, and procedures for receiving benefits. *McDonald v. Provident Indem. Life Ins. Co.,* 60 F.3d 234, 236 (5th Cir.1995). A formal document designated as "the plan" is not required. *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236, 241 (5th Cir.1990). An employer may create a plan "through the purchase of insurance or otherwise," 29 U.S.C. § 1002(1), and the Fifth Circuit has repeatedly found that group insurance coverage purchased by employers constitutes a plan. *Hernandez v. Jobe Concrete Prods., Inc.,* 282 F.3d 360, 363–64 (5th Cir.2002); *Kidder v. H & B Marine, Inc.,* 932 F.2d 347, 353 (5th Cir.1991); *Memorial Hosp. Sys.,* 904 F.2d at 240.

■ Here, there is no dispute that insurance was purchased—Dear sought and obtained benefits under the Group Policy, under which G & A was a participating

employer. Moreover, the Certificate, standing alone, contains all of the information necessary to establish that a plan exists, as it identifies G & A as a participating employer, describes the benefits and classes of beneficiaries, sets forth the financing sources, outlines the claim and benefit procedures, and contains a page of information required by ERISA. Simply put, a plan existed.

 Second, the group policy is outside the safe harbor. To prove that the group policy was not part of an employee welfare benefit plan, Dear must establish that (1) the employer did not pay any of the premiums, (2) participation by the employees was voluntary, (3) the employer's role was limited to collecting and remitting premiums, *and* (4) the employer received no profit from the plan. *See Memorial Hosp. Sys.*, 904 F.2d at 241 n. 6 (citing 29 C.F.R. § 2510.3–1(j)); *Gahn v. Allstate Life Ins. Co.*, 926 F.2d 1449, 1452 (5th Cir.1991). The plan must meet all four criteria to be exempt. *Meredith*, 980 F.2d at 355. As already indicated, the evidence is undisputed that G & A paid 100% of the premiums for Dear and its other employees; participation by G & A's employees was not voluntary since they were all automatically covered under the group policy; G & A's role was not limited to collecting and remitting premiums, as it purchased coverage for its employees through Union Central, selected many of the Certificate's terms and provisions, and had the right to terminate the coverage. Further, G & A was responsible each month for calculating the total premiums that were due, paying such premiums in a timely fashion, distributing the Certificate to its employees, and providing Union Central with information regarding the covered individuals.

Third, G & A intended to benefit its employees. Again, G & A selected and purchased coverage under the group policy, selected many of the applicable terms and provisions, paid the premiums itself for its employees, remained involved with the maintenance and administration of the plan, distributed the Certificate, and calculated and remitted the monthly premium payments. In addition, Carolyn Goad, G & A's secretary/treasurer, testified that G & A intended to benefit its employees by providing them with coverage for medical bills and lost wages. Goad dep. at 113:2–15. G & A's extensive involvement confirms its intention to benefit its employees. *See McGaskey v. Hospital Housekeeping Sys. of Houston, Inc.*, 942 F.Supp. 1118, 1124 (S.D.Tex.1996) ("When the employer pays the premiums, selects the insurer, determines terms and coverage, and provides insurance to all full-time employees, the plan qualifies as an ERISA plan.").

Dear argues that the group policy cannot be an ERISA plan because Union Central sent Goad a letter in October 2007, several months after Dear's accident, suggesting that G & A implement an ERISA plan to complement its group accident policy. The letter included documentation and instructions for implementing a plan. G & A never submitted this documentation to Union Central. Dear argues that this is proof that the group policy is not an ERISA plan. The Court does not agree.

 First, ERISA can apply even if the employer failed to comply with ERISA's procedural requirements. *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 18 n. 10, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) ("The fact that the employer had not complied with the requirement of ERISA in operating this scheme therefore does not ... mean that no such program for paying benefits was in existence."); *see also Miller v. Monumental Life Ins. Co.*, 376 F.Supp.2d 1238, 1251 (D.N.M.2005) (employer's alleged failure to issue summary plan description did not permit court to disregard the terms of plan's insurance

policy), *rev'd on other grounds,* 502 F.3d 1245 (10th Cir.2007); *Del Rio v. Toledo Edison Co.,* 130 Fed.Appx. 746, 751 (6th Cir.2005) (nothing in ERISA's civil enforcement provision suggests that beneficiary should receive benefit award due to plan administrator's failure to disclose requested information).

■ Second, ERISA can apply in the absence of a formal document or other written agreement. *See Memorial Hosp. Sys.,* 904 F.2d at 241 (formal document designated as "the plan" is not required); *Donovan v. Dillingham,* 688 F.2d 1367, 1372 (11th Cir.1982) (ERISA does not require formal, written plan).

Third, ERISA may apply even if the parties did not intend or believe it to be applicable. *See MDPhysicians & Assocs., Inc. v. State Bd. of Ins.,* 957 F.2d 178, 183 n. 7 (5th Cir.1992) (ERISA coverage turns on whether plan satisfies statutory definition, not whether entity that established and maintained plan intends ERISA to govern); *Peckham v. Gem State Mut. of Utah,* 964 F.2d 1043, 1049 n. 11 (10th Cir.1992) (if a plan meets the applicable criteria, "it is governed by ERISA whether or not the parties wish to be subject to ERISA").

Finally, and most importantly, Dear has admitted facts in his pleadings sufficient to establish that G & A had an ERISA plan at the time of his accident. Dear has admitted in his pleadings that:

- G & A purchased coverage under the Group Policy (Complaint ¶ 5);
- Union Central issued the Group Policy "as an employee injury benefit plan" for G & A (Complaint ¶ 6);
- G & A is "the Plan Administrator" for this coverage (Complaint ¶ 6);
- G & A paid all of the premiums for the coverage of Dear and its other employees under the Group Policy

(Plaintiff's Response to Counterclaim (doc. # 8) ¶ 4);

- page 24 of the Certificate is entitled **"INFORMATION REQUIRED BY THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974"** (Doc. 8 ¶ 4) (bold in original);
- by virtue of his employment with G & A, Dear became eligible for and obtained accident medical expense insurance and weekly accident indemnity insurance coverage under the Group Policy (Doc. 8 ¶ 8);
- Dear (through his counsel, Richard Tinsman) repeatedly made demand on Union Central's third-party administrator, Verity National Group, Inc., to pay benefits under the Group Policy to him or on his behalf (Doc. 8 ¶ 8; see also Complaint ¶ 7);
- the Certificate contains the "Right To Recover Payment" subrogation provision on which Union Central relies (Doc. 8 ¶¶ 5–6);
- Verity National informed Tinsman of Union Central's subrogation lien in March 2006, sent him a copy of the Certificate in September 2006, reminded him of this lien in September 2007, and quoted the applicable subrogation provision to him (Doc. 8 ¶ 8); and
- either Union Central or Verity National has paid $127,998.01 to or for the benefit of Dear (Doc. 8 ¶ 8).

**ERISA's savings clause is inapplicable**

■ Having found the existence of a valid ERISA plan, the Court will address Dear's alternative argument that ERISA's "savings clause" avoids federal preemption. The savings clause provides that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulated

insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). For a state law to be deemed a law regulating insurance, it must satisfy two requirements: (1) "the state law must be specifically directed towards entities engaged in insurance," and (2) "the state law must substantially affect the risk pooling arrangement between the insurer and the insured." *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 341–42, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003). Dear argues that under Texas law the common-fund doctrine is applicable and requires that Union Central bear its share of the expenses incurred in the recovery and attorney's fees.

 The common-fund doctrine, however, does not apply. It is not, at least with respect to contractual subrogation rights, a state law, and even if it were, it is not specifically directed towards entities engaged in insurance. *See Lancer Corp. v. Murillo*, 909 S.W.2d 122, 126 (Tex.App.-San Antonio 1995, no writ) (noting that common-fund doctrine had been applied to class actions and shareholder derivative suits). Further, as the Texas Supreme Court squarely held last year, contract-based subrogation rights (such as those at issue here) are governed by the underlying agreement and cannot be invalidated by equitable considerations (such as the "make-whole" doctrine) that might apply in the absence of an agreement. *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 650 (Tex.2007). Although *Cantu* does not expressly address the "common-fund" doctrine, the Texas Supreme Court's opinion makes it clear that a contractual subrogation provision (such as the provision at issue here) must be enforced as written. The court in *Cantu* held that the insurer was "contractually entitled to recover ... the total amount of benefits it paid," and that amount was not reduced for attorney's fees or expenses. *Id.* at 651. Since Texas law does not recognize the common-

find doctrine in situations such as this, the savings clause is inapplicable.

### Union Central's subrogation right is enforceable under both ERISA and Texas law

 In any event, Union Central has an enforceable "first-dollar" subrogation right to recover the full $127,998.01 it paid to or for the benefit of Dear without deductions or offsets under both ERISA and Texas law. The Certificate provides:

> This provision "Right to Recover Payment" is a subrogation provision as is made a part of the Group Policy.
>
> 1. If We make any payment under the Group Policy and the Insured to or for whom such payment was made has a right to recover damages from any person or organization on account of any event which causes or contributes to the condition on account of which payment was made by Us, *We shall be subrogated to that right to the extent of its payment.* The Insured shall execute and deliver instruments and papers and do whatever else is necessary to enable Us to secure and exercise such rights and shall do nothing after loss to prejudice such rights.
>
> 2. If We make any payment under the Group Policy and the Insured to or for whom such payment is made recovers damages from any person or organization on account of any event which causes or contributes to the condition on account of which payment was made by Us, the Insured shall immediately notify Us of such recovery. *The Insured shall hold in trust for Us the proceeds of any such recovery and shall reimburse Us to the extent of Our payment.*

Defendant's ex. UC 00022. (emphasis added).

Clearly, under ERISA, this provision entitles Union Central to recover the full

$127,998.01. *See Sunbeam–Oster Co., Inc. Group Benefits Plan for Salaried and Non–Bargaining Hourly Employees v. Whitehurst,* 102 F.3d 1368, 1378 (5th Cir. 1996) (awarding "first dollar" priority to an ERISA plan and noting that "we have serious doubts whether we would ever approve or adopt the Make Whole rule as this circuit's default rule for the priority of recovery in reimbursement or subrogation between an ERISA plan and its participant or beneficiary ..."); *Walker v. Wal–Mart Stores, Inc.,* 159 F.3d 938, 940 (5th Cir.1998) (where unambiguous language of plan did not include provision for reduction of plan's subrogation lien for the payment of attorney's fees or costs, "[i]nterpreting the provisions to provide for attorney's fees and expenses would have been wholly improper by the district court"); see also *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough,* 354 F.3d 348, 361 (5th Cir.2003) ("neither the federal nor Texas common fund doctrine may be invoked to prevent or reduce the plan's recovery of the funds that it advanced to [the insured], up to the full amount of his recovery from the tortfeasor").

Under Texas law, the result is the same. *Cantu* confirms that equitable doctrines cannot be used to vary the terms of contractual subrogation provisions. *Cantu,* 234 S.W.3d 642, 650–51. Since the policy's subrogation provision unambiguously provides for first-dollar recovery without any reduction for attorney's fees or expenses, Union Central is entitled to recover the total amount of benefits it paid to or for the benefit of Dear.

### Union Central, not G & A, has the right of subrogation

Dear argues that the 2007 Summary Plan Description gives the subrogation right to G & A, and that the SPD controls over the policy, which gives the subrogation right to Union Central. *See Hansen v. Continental Ins. Co.,* 940 F.2d 971, 982 (5th Cir.1991) (if there is a conflict between the SPD and the policy, the SPD controls). This argument is unavailing. The SPD Dear relies on is the October 2007 SPD that Dear admits was never adopted by G & A. Response at 2–3. Moreover, even if it were effective and even if it conflicted with the policy language, the SPD is dated some 20 months *after* Dear's accident. Thus, the October 2007 SPD is irrelevant to the question of Union Central's subrogation lien. *See Franks v. Prudential Health Care Plan. Inc.,* 164 F.Supp.2d 865, 879–880 (W.D.Tex.2001) (insurer's "contractual right to reimbursement arose under the plan in effect at the time of his injury and when he received treatment").

Union Central's motion for summary judgment (docket no. 5) is GRANTED. It is ORDERED that Dear take nothing by his claims, and that Union Central is awarded judgment in the amount of $127,998.01 that it paid to or for the benefit of Dear. Union Central may move to recover its costs and attorney's fees. FED. R.CIV.P. 54(d); Local Rule CV–7(i).