**FORTIS BENEFITS, Petitioner,**

v.

**Vanessa CANTU and Ford Motor Company, Respondents.**

No. 05–0791.

Supreme Court of Texas.

Argued Nov. 16, 2006.

Decided June 29, 2007.

Rehearing Denied Nov. 2, 2007.

Loren R. Smith, Kelly, Smith & Murrah, P.C., Thomas A. Laucius, Laucius & Associates, Houston, TX, for Petitioner.

Thomas B. Cowart, Law Offices of Thomas B. Cowart, P.C., Adolfo Ruiz Rodriguez, Basheer Youssef Ghorayeb, Rodriguez Law Firm, P.C., Dallas, TX, Michael W. Eady, Thompson, Coe, Cousins & Irons, L.L.P., Austin, TX, for Respondents.

Kevin J. Cook, Payne & Blanchard, Dallas, TX, E.L. Caraway III, Watson Caraway Harrington Nelson Midkiff & Luningham, Fort Worth, TX, for Other Interested Parties.

Gary L. Wickert, Matthiesen, Wickert & Lehrer, S.C., Hartford, WI, Brent M. Rosenthal, Baron & Budd, P.C., Dallas, TX, for Amicus Curiae.

Justice WILLETT delivered the opinion of the Court.

The issue in this insurance subrogation case is whether the equitable "made whole" doctrine—the rule that an insurer is not entitled to subrogation of medical benefits unless the insured has been "made whole"—trumps an insurer's contract-based subrogation right.

After respondent Vanessa Cantu sued multiple parties for severe injuries she sustained in an auto accident, her medical insurer, petitioner Fortis Benefits, intervened, claiming a subrogation right under the policy. The various defendants settled with Cantu, and Fortis looked only to Cantu for its recovery. A divided court of appeals upheld a trial court finding that because Cantu's medical expenses exceeded the settlement amount plus the benefits Fortis had paid, Fortis's subrogation claim was barred by the equitable "made whole" doctrine. We hold that the "made whole" doctrine must yield to Fortis's right to contractual subrogation under the plain terms of the insurance policy.

## I. Background

Cantu suffered severe injuries in a car wreck and later sued the driver of the vehicle in which she was riding, his employer, the vehicle seller, and the vehicle manufacturer (Ford). Fortis intervened and asserted contractual subrogation and reimbursement rights to recoup from Cantu's tort recovery the amount of medical benefits it had paid under the policy. At a pretrial conference, Fortis agreed with all parties on the record that Fortis was excused from participating in the pretrial and trial proceedings and that Fortis at the post-verdict phase would look only to Cantu to resolve its subrogation and reimbursement claims.

Cantu settled her claims with the defendants before trial for $1.445 million. Cantu and Fortis disputed what portion of the settlement proceeds, if any, should go to Fortis, and Cantu moved for summary judgment, arguing she had not been "made whole" by the settlement. Cantu's past medical expenses totaled $378,500 (of which Fortis claimed to have paid $247,534.14), and her summary judgment evidence included two "life care plans" estimating her future medical expenses at roughly $1.7 million and $5.3 million. She argued that her past and future medical expenses, exclusive of other amounts like pain and suffering, exceeded the amount of the settlement plus what Fortis had already paid. Cantu argued that the "made whole" doctrine precluded Fortis's contractual claims of subrogation and reimbursement. The trial court granted summary judgment in favor of Cantu, and a divided court of appeals affirmed.[1]

## II. Subrogation and the "Made Whole" Doctrine

This Court recognized the "made whole" doctrine twenty-seven years ago in *Ortiz v. Great Southern Fire & Casualty Insurance Co.*[2] The Ortiz family had a fire insurance policy from Great Southern on their home, but not the contents.[3] A fire caused damages of $4,000 to the home and $11,614 to personal property, and Great Southern paid $4,000 for home repairs.[4] The Ortizes then sued Stacy–Mason, Inc., alleging that one of its employees negligently started the fire. Great Southern intervened, claiming a right of equitable

---

1. 170 S.W.3d 755.

2. 597 S.W.2d 342 (Tex.1980).

3. *Id.* at 343.

4. *Id.*

subrogation.[5] After the Ortizes settled with Stacy–Mason for $10,000, the trial court awarded, and the court of appeals affirmed, $4,000 of that settlement to Great Southern.[6]

We reversed, holding, "An insurer is not entitled to subrogation if the insured's loss is in excess of the amounts recovered from the insurer and the third party causing the loss."[7] We reasoned that one justification for equitable subrogation is to prevent the insured from receiving a double recovery, first from the insurer, then from the third party.[8] We also recognized, however, that if the insured's total recovery is less than his or her losses, equity cuts the other way: "when 'either the insurer or the insured must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume.' "[9] Because the settlement in Ortiz encompassed both covered and noncovered items, we remanded for a determination of how much of the $10,000 related to house damage.[10]

■ Ortiz would govern if Fortis were merely asserting a claim for *equitable* subrogation. But Fortis is not citing principles of equity to recover its money; its policy with Cantu conferred on Fortis two separate *contractual* rights of recovery, one styled "subrogation" and one styled "reimbursement."[11] Fortis argues that these provisions authorize recovery from Cantu's $1.445 million settlement with the defendants, and that neither provision is displaced by the "made whole" doctrine. We agree.

## A. Equitable Subrogation v. Contractual Subrogation

Our *Ortiz* decision addressed the "made whole" doctrine in the context of equitable subrogation, but it did not discuss how the doctrine applies, if at all, to contractual subrogation. Other courts, however, have discussed whether the doctrine applies in the face of a contract that grants the insurer greater subrogation rights. For example, in *Oss v. United Services Automo-*

---

5. *Id.*

6. *Id.*

7. *Id.*

8. *Id.*

9. *Id.* at 344 (quoting *Garrity v. Rural Mut. Ins. Co.*, 77 Wis.2d 537, 253 N.W.2d 512, 514 (1977)).

10. *Id.*

11. The policy states:

**Subrogation Right.** Upon payment of benefits, *We will be subrogated to all rights of recovery a Covered Person may have against any person or organization.* This includes but is not limited to recoveries against such third party, against any liability coverage for such third party or against automobile insurance in the event a claim is made under the uninsured or underin-

sured motorist coverages. Such right extends to the proceeds of any settlement or judgment; but is limited to the amount of benefits We have paid. You must 1) do nothing to prejudice any right of recovery; 2) execute and deliver any required instruments or papers; and 3) do whatever else is necessary to secure such rights.

If We are precluded from exercising Our Subrogation Right, We may exercise Our Right of Reimbursement.

**Right of Reimbursement.** If benefits are paid under this plan, and any Covered Person recovers against any person or organization by settlement, judgment or otherwise, *We have a right to recover from that Covered Person an amount equal to the amount We have paid.* This includes but is not limited to recoveries against such third party, against any liability coverage for such third party or against automobile insurance in the event a claim is made under the uninsured or underinsured motorist coverages.

(emphases added).

*bile Ass'n,*[12] the Fifth Circuit, applying Texas law in a diversity case, was confronted with facts similar to those in this case. The insured was not made whole by the settlement following a car wreck, yet insurer USAA sought enforcement of its contractual subrogation rights under the policy.[13] Like Fortis, USAA urged the Fifth Circuit to reject the "made whole" doctrine by distinguishing *Ortiz* as involving equitable rather than contractual subrogation.[14] The Fifth Circuit, relying on the El Paso Court of Appeals' decision in *Means v. United Fidelity Life Insurance Co.,* refused because it believed that, in Texas, "the same principles govern both equitable and contractual subrogation." [15]

In *Means,* the insureds had challenged the validity of United Fidelity's contractual subrogation right to foreclose on their 200–acre property.[16] The court noted, "Whether we have a purely equitable subrogation or, as here, a purely contractual one where both Mr. and Mrs. Means agreed to the subrogation, the principles are the same, and the rights of United Fidelity Life Insurance Company after the payment were superior to the homestead rights of Mr. and Mrs. Means." [17] Read in context, the court's discussion in *Means* does little more than affirm a subrogee's basic rights, whether they arise via contract or equity. Moreover, *Means* no-

where addressed the "made whole" doctrine that we first articulated in *Ortiz,* nor could it have, since *Ortiz* was decided three years later. When the El Paso Court of Appeals declared in *Means* that "the principles are the same" in contractual and equitable subrogation, it did so against a legal landscape that did not yet include the "made whole" doctrine.[18] For this reason, *Means* is not particularly instructive, nor is *Oss,* which relies predominantly on *Means.*

Other Texas courts of appeals have addressed the difference between equitable and contractual subrogation. For example, the Austin Court of Appeals in *Lexington Insurance Co. v. Gray* recognized the distinction between "legal" and "conventional" subrogation.[19] The former is governed by equity; the latter by contract.[20] The court (1) observed that Texas courts have given "substance to the distinction," (2) noted the "unusually 'hospitable' treatment that the right of subrogation has historically received in Texas," especially express subrogation agreements, which are given "considerable weight" and are governed by general contract law principles,[21] and (3) cited several cases holding that a subrogee invoking contractual subrogation can "recover without regard to the relative equities of the parties." [22] *Lexington* did not specifically

---

12. 807 F.2d 457 (5th Cir.1987).

13. *Id.* at 458–59.

14. *Id.* at 460.

15. *Id.* (citing 550 S.W.2d 302, 309 (Tex.Civ. App.-El Paso 1977, writ ref'd n.r.e.)).

16. 550 S.W.2d at 308.

17. *Id.* at 309.

18. *Id.*

19. 775 S.W.2d 679, 683 (Tex.App.-Austin 1989, writ denied).

20. *Id.*

21. *Id.* at 683–84.

22. *Id.* (citing *Girard Fire & Marine Ins. Co. v. Farmer,* 53 S.W.2d 1016 (Tex.Com.App.1932, judgm't adopted); *Duval County Ranch Co. v. Alamo Lumber Co.,* 663 S.W.2d 627 (Tex.App.-Amarillo 1983, writ ref'd n.r.e.); *Quincy Mut. Fire Ins. Co. v. Jones,* 486 S.W.2d 126 (Tex. Civ.App.-Dallas 1972, no writ); *F.H. Vahlsing, Inc. v. Hartford Fire Ins. Co.,* 108 S.W.2d 947

involve the "made whole" doctrine we had adopted a decade earlier in *Ortiz*, but it suggested that this equitable defense would not apply in the face of an express agreement whereby the parties agree in advance that the matter will be governed by contract principles rather than equitable principles. Where the policy's terms govern subrogation, the court added, "there is no reason for the equitable principles usually found in subrogation cases to come into play." [23]

A few years later, however, in *Esparza v. Scott & White Health Plan*, [24] the Austin Court of Appeals backed away from this interpretation. The Esparzas settled for an amount that did not make them whole, and Scott and White sought subrogation under an express provision in the parties' insurance contract, citing *Lexington* as holding that the "made whole" doctrine should apply only to equitable subrogation and not to contractual subrogation. [25] The court of appeals disagreed, stating:

> The distinction we drew between legal and conventional subrogation in *Lexington* simply means that under conventional subrogation no balancing of equities is necessary to determine whether the subrogee has a right to recover at all. While an insurance contract providing expressly for subrogation may remove from the realm of equity the question of *whether* the insurer has a right to subrogation, it cannot answer the question of *when* the insurer is actually entitled to

subrogation or *how much* it should receive....

> ... To avoid injustice, the equities must still be balanced in deciding what amount, if any, the subrogee is entitled to receive in a given case. [26]

The court adopted the reasoning from *Oss* that a boiler-plate subrogation provision does not automatically negate an insurance policy's fundamental purpose, which is to protect the insured by shifting the risk of loss to the insurer. [27] If anyone is to go unpaid, the court reasoned, it should be the insurance company. The court concluded that contracts " 'confirm, but [do] not expand, the equitable subrogation rights of insurers,' " and the equities must still be balanced to achieve justice. [28]

■ We do not disagree that equitable and contractual subrogation rest upon common principles, but contract rights generally arise from contract language; they do not derive their validity from principles of equity but directly from the parties' agreement. The policy declares the parties' rights and obligations, which are not generally supplanted by court-fashioned equitable rules that might apply, as a default gap-filler, in the absence of a valid contract. If subrogation arises independent of any contract, then an express subrogation agreement would be superfluous and serve only to acknowledge this preexisting right, a position we reject. [29]

■ Contractual subrogation clauses express the parties' intent that reimbursement should be controlled by agreed con-

(Tex.Civ.App.-San Antonio 1937, writ dism'd w.o.j.)).

**23.** *Id.* at 684.

**24.** 909 S.W.2d 548 (Tex.App.-Austin 1995, writ denied).

**25.** *Id.* at 551 (citing 775 S.W.2d 679).

**26.** *Id.* at 552–52 (emphasis in original).

**27.** *Id.*

**28.** *Id.* at 552 (quoting *Oss*, 807 F.2d at 460).

**29.** Even if the "Subrogation Right" provision merely confirmed the preexisting right of equitable subrogation and nothing more, the policy's separate and broader "Right of Reimbursement" provision affords Fortis an alternative basis to recover from Cantu the medical benefits it paid.

tract terms rather than external rules imposed by the courts. The United States Supreme Court addressed this very point in a subrogation case decided shortly after we granted the instant case. In *Sereboff v. Mid Atlantic Medical Services, Inc.*,[30] insurer Mid Atlantic was an ERISA plan fiduciary for the Sereboffs. When the Sereboffs were injured in an auto accident, Mid Atlantic paid the couple's expenses pursuant to the plan.[31] When the Sereboffs settled the tort claims that arose from the accident, Mid Atlantic filed suit under ERISA to collect the medical expenses it had paid.[32] Mid Atlantic sought reimbursement under an "Acts of Third Parties" provision in the plan.[33] The Sereboffs argued that the equitable defense of the "made whole" doctrine should apply, even though language in the plan document was to the contrary.[34] The Court disagreed, comparing an action under the "Acts of Third Parties" provision to an action to enforce an equitable lien established by agreement.[35] The Court refused to apply the "made whole" doctrine, deeming the Sereboffs' equitable defenses "beside the point" because Mid Atlantic's subrogation claims arose by written agreement.[36]

This position was earlier adopted by the Fifth Circuit in another ERISA case, *Walker v. Wal–Mart Stores, Inc.*[37] That case, like today's case, concerned a subrogation clause that granted a right of recovery against "any and all" third-party settlements. Walker brought a malpractice action against her dentist, alleging he propped open her mouth excessively, resulting in three jaw surgeries and medical expenses of over $41,000.[38] Walker settled for $12,500, and the trial court awarded the insurer the entire settlement amount as first-money reimbursement for the medical benefits it paid.[39] The Fifth Circuit held that "the Plan's language is unambiguous.... We agree with the district court in holding that the 'any and all' language plainly means the first dollar of recovery (any) and 100% recovery (all) of the funds received by the plaintiff in the settlement, up to the full amount of the benefits paid."[40]

■ The three varieties of subrogation—equitable, contractual, and statutory—represent three separate and distinct rights that, while related, are independent of each other. Independent, however, does not mean co-equal. We generally adhere to the maxim that "equity follows the law," which requires equitable doctrines to conform to contractual and statutory mandates, not the other way around. Where a valid contract prescribes particu-

---

30. —— U.S. ——, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006).

31. *Id.* at 1872.

32. *Id.* at 1873.

33. *Id.* at 1872–73.

34. *Id.* at 1877.

35. *Id.*

36. *Id.* Cantu would have us distinguish *Sereboff* because it arises under the ERISA statute and "has no application to this non-ERISA case." However, "ERISA neither requires a welfare plan to contain a subrogation clause nor does it bar such clauses or otherwise regulate their content." *Ryan v. Fed. Express Corp.*, 78 F.3d 123, 127 (3d Cir.1996). Accordingly, a contractual subrogation provision, whether in an ERISA plan or in a private insurance policy, must be enforced as written. *See id.* at 128.

37. 159 F.3d 938 (5th Cir.1998) (per curiam).

38. *Id.* at 939.

39. *Id.*

40. *Id.* at 940.

lar remedies or imposes particular obligations, equity generally must yield unless the contract violates positive law or offends public policy. This Court has "long recognized a strong public policy in favor of preserving the freedom of contract."[41] And in *Texas Ass'n of Counties County Government Risk Management Pool v. Matagorda County*, we emphasized that insurers are well equipped to evaluate and reduce risk by, for example, "drafting policies to specifically provide for reimbursement."[42] Fortis did exactly that, drafting two separate recovery provisions that replaced equitable rights with specific contractual rights. Neither subrogation nor reimbursement clauses violate Texas public policy.[43] As we have stated, "'the State's public policy is reflected in its statutes,'"[44] and Texas workers' compensation law specifically embraces an insurer's first-money right of subrogation, thus indicating no blanket legislative disfavor of such provisions.[45] It is indeed difficult to declare something contrary to public policy when state law, both statutory and regulatory, actually suggests approval.[46] In a subrogation case arising under the Labor Code, the Amarillo Court of Appeals distinguished statutory subrogation from equitable and contractual subrogation.[47] The court looked only at the statute's plain language in affirming the trial court's refusal to invoke its equitable powers to deny subrogation.[48] We agree with this modest, text-based approach.

■ Given this insurance policy's plain language, we are loathe to judicially rewrite the parties' contract by engrafting extra-contractual standards that neither the Legislature nor the Texas Department of Insurance has thus far decided to promulgate. As we have said before, balancing dueling policy concerns is generally for non-judicial bodies, and it remains the "better policy for the contracts of insurance to be changed by the public body charged with their supervision, the State Board of Insurance, or by the Legislature, rather than for this Court" to contravene the express language of insurance contracts with equitable arguments.[49] The

---

**41.** *Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 553 (Tex.2001) (citing *Wood Motor Co. v. Nebel*, 150 Tex. 86, 238 S.W.2d 181, 185 (1951)). As a rule, a court should not by judicial fiat insert non-existent language into statutes or into parties' agreed-to contracts, or delete existent language from them either. Our confined duty is to construe the contract as is, and holding that equitable considerations trump contrary contract terms would render contractual subrogation a nullity.

**42.** 52 S.W.3d 128, 136 (Tex.2000). As we noted, "the presence of absence of a reimbursement clause in the insurance contract could affect the premium charged," so such provisions cannot be deemed illusory. *Id.* at 131 n. 4.

**43.** *See id.; Ortiz*, 597 S.W.2d at 343.

**44.** *Town of Flower Mound v. Stafford Estates Ltd. P'ship*, 135 S.W.3d 620, 628 (Tex.2004) (quoting *Texas Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 250 (Tex.2002)).

**45.** *See* TEX. LABOR CODE §§ 417.001–.004 (authorizing subrogation in Texas workers' compensation law).

**46.** *See Lawrence*, 44 S.W.3d at 553 ("Public policy, some courts have said, is a term of vague and uncertain meaning, which it pertains to the law-making power to define, and courts are apt to encroach upon the domain of that branch of the government if they characterize a transaction as invalid because it is contrary to public policy, unless the transaction contravenes some positive statute or some well-established rule of law.").

**47.** *Tex. Workers' Comp. Ins. Fund v. Knight*, 61 S.W.3d 91, 93 (Tex.App.-Amarillo 2001, no pet.).

**48.** *Id.*

**49.** *Members Mut. Ins. Co. v. Cutaia*, 476 S.W.2d 278, 281 (Tex.1972).

contrary, however—replacing equitable protections with specific contract language—is not unknown in Texas law.[50] Parties are thus free to negate the "made whole" doctrine contractually, and to do so before an event occurs that triggers medical benefits under the policy.[51]

Leading insurance law treatises likewise recognize that specific policy terms can override equitable principles and that many jurisdictions, though not all, apply the "made whole" doctrine only in the absence of contrary reimbursement language in the contract.[52] We agree with those courts holding that contract-based subrogation rights should be governed by the parties' express agreement and not invalidated by equitable considerations that might control by default in the absence of an agreement.[53]

## B. Subrogation Under Cantu's Insurance Contract With Fortis

We turn now to the specific language of the policy in issue, which defines the parties' rights and obligations. It contains a section called "Recovery," which includes a "Subrogation Right" provision and a separate (and broader) "Right of Reimbursement" provision. The former establishes a right of subrogation: "Upon payment of benefits, We [Fortis] will be subrogated to *all* rights of recovery a Covered Person [Cantu] may have against *any* person or organization."[54] The provision continues: "Such right extends to the proceeds of *any* settlement or judgment; but is limited to the amount of benefits We have paid."[55] Fortis thus retained an unfettered right to recover the proceeds from

---

**50.** *See, e.g., Zapata v. Torres,* 464 S.W.2d 926, 930 (Tex.Civ.App.-Dallas 1971, no writ) (stating it is "reasonable to suppose" that the parties' express agreement was intended to replace implied equitable rights) (citations omitted).

**51.** Of course, if the Legislature and/or TDI believes that the contract's terms, though clear, work an unfair result, they can take action to prescribe or proscribe whatever principles they believe strike the best balance. The Insurance Code requires insurers to submit their insurance forms to TDI for approval, Tex. Ins.Code § § 1701.051, 1701.054, and while TDI can disapprove forms it deems unjust, *id.* § 1701.055(a)(2), it did not do so here.

**52.** 16 Couch on Insurance 3d §§ 223:134, 223:147; 22 Holmes Appleman on Insurance 2d § 141.2[B][1]; 3 Appleman Insurance Law & Practice § 1675.

**53.** Cantu attempts to avoid the policy's express language by arguing that insurance contracts "are contracts of adhesion in which the insured has little, if any, negotiating room," and that contractual abrogation of the "made whole" doctrine is thus unconscionable and unenforceable. Even taking as true the contention that insurance contracts are contracts of adhesion that reflect unequal bargaining power, "adhesion contracts are not automatically unconscionable or void." *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 574 (Tex.1999). Nor is it per se unconscionable that an insurer would seek to reduce its risk and boost its solvency by including a subrogation and/or reimbursement clause. In any event, Cantu has produced no evidence of duress or unconscionability.

**54.** Emphasis added. Although Cantu argues that this language is so open-ended it allows for subrogation of claims unrelated to the policy, we must construe this provision in relation to the entire instrument, *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983), to avoid an interpretation that renders the contract "unreasonable, inequitable, and oppressive," *Reilly v. Rangers Mgmt., Inc.,* 727 S.W.2d 527, 530 (Tex.1987). This contract is a "Major Medical Policy" that "describes the benefits available to You and covered Family Members from Fortis Insurance Company." The provision therefore gives Fortis a subrogation right only on recoveries for claims that relate to benefits available under the contract.

**55.** Emphasis added.

the settlement of the underlying suit, the only limitation being the *amount* of recovery—what Fortis had paid under the contract. Nowhere does this provision suggest that Cantu must first be "made whole" for Fortis to recover. This provision does not use the modifier "first money," but its meaning is not imprecise or ambiguous. The contract's specific language controls Fortis's right to subrogation, and the equitable defense of the "made whole" doctrine must give way.

Accordingly, we hold that Fortis is contractually entitled to recover from the $1.445 million settlement the total amount of benefits it paid to Cantu.[56]

### III. Fortis's Claims Against Ford

■■■■■■ Fortis also asserts that the court of appeals erred in not considering the validity of a pretrial agreement regarding its claims against defendant Ford. At a pretrial conference convened under Texas Rule of Civil Procedure 11, Fortis agreed to divide the proceeding into two phases: first Cantu would litigate the case with the defendants completely independent from Fortis, and then Fortis would look only to Cantu to resolve its claim for subrogation. The Rule 11 agreement and stipulations in the record, which narrowed the issues presented to the trial court, make clear that Fortis has unequivocally relinquished any claims against Ford. Just as Cantu entered into and is bound by the specific language in the insurance agreement, Fortis entered into and is bound by the specific language in the Rule 11 agreement. Rule 11 aims to remove misunderstandings and controversies that accompany verbal assurances, and the written agreements "speak for themselves."[57] As this is a valid pretrial agreement under Rule 11, the trial court had a duty to enforce its terms.[58] Hence, the trial court did not err in dismissing Fortis's claims against Ford, and the court of appeals did not err in affirming that portion of the judgment.

### IV. Conclusion

■■■■■ The equitable "made whole" doctrine is inapplicable when the parties' agreed contract provides a clear and specific right of subrogation. Accordingly, while we affirm that part of the court of appeals' judgment regarding respondent Ford, we reverse and remand to the trial court for further proceedings consistent with this decision.

---

56. Because we enforce the contract's "all rights of recovery" subrogation provision, we need not reach the separate "Right of Reimbursement" provision, which by its terms only applies if Fortis is denied subrogation. Nor need we consider whether the trial court erred in computing past and future medical expenses in relation to Cantu's total damages.

57. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex.1995) (citing *Birdwell v. Cox*, 18 Tex. 535, 537 (1857)).

58. *See EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 91 (Tex.1996) (orig. proceeding) (noting that trial courts cannot consider evidence outside the bounds of the Rule 11 agreement); *Scott–Richter v. Taffarello*, 186 S.W.3d 182, 189 (Tex.App.-Fort Worth 2006, pet. denied) ("A trial court has a ministerial duty to enforce a valid Rule 11 agreement.").