IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 03-0647
════════════
 
Evanston Insurance Company, 

Petitioner,
 
v.
 
ATOFINA Petrochemicals, 
Inc.
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Ninth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued April 13, 
2005
 
 
            
Justice Hecht, joined by 
Justice Johnson, concurring in 
part and dissenting in part.
 
 
            
I agree with the Court that Evanston’s 
commercial liability umbrella policy covered the Jones claim, and that Evanston must reimburse 
ATOFINA the settlement amount if it was reasonable. I do not agree that 
Evanston, which 
had no duty to defend ATOFINA, is estopped to 
challenge the reasonableness of the settlement simply because it denied coverage 
and refused to participate in negotiations with the claimants. I would remand 
the reasonableness issue to the trial court to resolve the parties’ factual 
dispute. Accordingly, I respectfully dissent.
            
An insurer that breaches its duty to defend a claim cannot later be heard 
to complain that the amount the insured paid in settlement was unreasonable, 
absent evidence of collusion. This is what we held in Employers Casualty Co. 
v. Block,[1] and as far as I can tell, it is uniformly 
the rule throughout the country.[2] This is hardly surprising. An insurer 
that wrongly refuses to defend a claim, leaving its insured to defend himself, can hardly be allowed to argue that it would have 
done a better job.
            
But Evanston had no duty to defend ATOFINA, as 
ATOFINA itself admits.[3] The umbrella policy gave Evanston the 
right to defend a covered claim but no duty unless the claim was not 
covered by an underlying policy or that policy’s limits were exhausted, neither 
of which occurred here.[4] Then why does Block’s estoppel rule apply? Because, the Court says, Evanston refused to 
participate in settlement negotiations between ATOFINA and the Jones plaintiffs. 
“[W]hat is most important in this context,” the Court explains, “is notice to 
the insurer and an opportunity to participate in the settlement discussions.”[5] But Evanston had no duty to participate in 
settlement discussions, and surely ATOFINA’s 
invitation could not create one. The Court also faults Evanston for refusing to acknowledge coverage, suggesting 
that Evanston’s 
denial of coverage may have been an anticipatory breach of the policy.[6] But even if it was, a party’s 
anticipatory breach of a contract only allows the other party to sue for damages 
immediately; it does not alter the breaching party’s contractual obligations.[7] The Court says that Evanston’s “explicit, 
unqualified rejection of coverage surely operates to trigger the equitable 
principles in Block.”[8] But Evanston had no duty to admit coverage; its 
duty under its policy was to pay a judgment on a covered claim or a settlement 
to which it agreed. Neither occurred. Evanston’s policy provided 
that it had “[n]o other obligation . . . to . . . perform acts or services”. 
Even if Evanston 
had admitted coverage, it still had no duty to participate in settlement 
negotiations. The Court holds that when an excess carrier acts entirely within 
its rights, equity requires that it be estopped to 
question the reasonableness of a settlement in which it took no part. It is a 
different sort of equity that punishes someone, even an insurance company, for 
acting legally.
            
A few days ago, the Court refused to allow an insurer to seek restitution 
for payment of a non-covered claim because the policy did not provide for such 
an equitable remedy.[9] Sounding what has come to be a familiar 
refrain, the Court “proclaimed itself ‘loathe to judicially rewrite the parties’ contract by engrafting extra-contractual 
standards’”.[10] If the insurer had wanted the right to 
restitution, the Court said, it should have said so in the policy. Applying this 
rule, one might think that if ATOFINA had wanted the rights to require Evanston to acknowledge 
coverage before payment was due and to accept any invitation to participate in 
settlement negotiations, it should have included them in the policy. Either the 
Court thinks that imposing additional duties on an insurer does not entail 
rewriting the policy, or else it does not find that effort quite as loathesome.
            
ATOFINA has not cited, and the Court has not found, authority of any kind 
to support the Court’s holding that an excess insurer is estopped to challenge the reasonableness of a settlement in 
these circumstances. This, too, is hardly surprising. What possible basis could 
there be to estop an insurer who has not breached a 
duty to its insured? At least one case suggests that the Court’s holding is 
wrong. The Fifth Circuit has held in United States Aviation Underwriters, 
Inc. v. Olympia Wings, Inc. that an insured who 
rejects a defense tendered under a reservation of rights cannot require the 
insurer, once coverage has been established, to pay a settlement of the claim 
without proving that it was reasonable.[11] If an insurer that has not breached its 
duty to defend is not estopped from contesting the 
reasonableness of a settlement, surely an insurer with no duty to defend at all 
should not be estopped. Amazingly, the Court finds 
support in the Circuit’s conclusion that “under Texas law an insurer which is obliged to 
defend its insured but flatly refuses to do so . . . cannot contest the 
reasonableness of a consent judgment agreed to between the insured and the 
injured party.”[12] The Circuit was completely right. But 
here, Evanston 
had no duty to defend. In the Court’s view, since an insurer that breaches a 
duty to defend is estopped, an insurer with no duty to 
defend is also estopped. Any logic hiding in this view 
is hard to find.
            
Having refused to agree to a settlement because it believed the claim was 
not covered, and now having had the coverage issue resolved in ATOFINA’s favor, Evanston is required to pay the settlement if 
it was reasonable. But nothing in Evanston’s policy obligates it to pay an 
unreasonable settlement, and the parties still disagree whether ATOFINA’s settlement was reasonable. ATOFINA moved for 
summary judgment that its settlement was reasonable, based on the affidavits of 
its lawyer and the mediator in the liability case. This evidence certainly 
supports ATOFINA’s position, as does its argument that 
it would not have paid $5.75 million out of its own pocket (in addition to the 
$1 million its primary insurer paid) to settle the claim if it had thought the 
amount unreasonable. But ATOFINA’s view of 
reasonableness changed over time. Only a few months before the case settled, 
ATOFINA’s lawyer suggested in a letter to Evanston’s adjuster that a 
judgment of $5 million was possible. This estimate, though accompanied by 
caveats about the assumptions on which it was based, was only about 
three-fourths of the settlement to which ATOFINA eventually agreed. ATOFINA 
argues that developments after the letter was written cast the case in a poorer 
light. Evanston 
offered the letter and affidavits from its adjuster and an insurance defense 
lawyer in response to ATOFINA’s motion. Both opined 
that ATOFINA’s settlement was more than what would 
have been reasonable; one estimated that a reasonable settlement would have been 
between $1 million and $2 million. These affidavits certainly do not establish 
that the settlement was unreasonable, but they do raise a fact issue that must 
be resolved. I would remand the case to the trial court for that purpose. 
Because the Court does not do so, I respectfully dissent.
 
            
            
            
            
            
__________________
            
            
            
            
            
Nathan L. Hecht
            
            
            
            
            
Justice
 
Opinion delivered: February 15, 
2008






[1] 
744 S.W.2d 940, 943 (Tex. 1988).

[2] 
See ante at ___ & n.62.

[3] 
ATOFINA’s Brief in Response at 31 (“To be sure, 
Evanston did not 
owe ATOFINA a duty to defend.”); see also ante at ___ (“no duty to 
defend is implicated in this case”).

[4] 
The policy stated:
 
                
    
“A.          We will have the right 
to defend any “claim” or “suit” seeking damages for “bodily injury”, “property 
damage”, “personal injury”, or “advertising injury” to which this insurance 
applies, but:
 
                
                
                
                
                
                
                
                
    * * *
 
                
    
“2.           When an “occurrence” or “offense” is covered by this policy 
and is also covered by “underlying insurance” or by any other applicable 
insurance, we have no duty to defend. We shall have the right to associate with 
the insured in the defense and control of any “claim” or “suit” that we think 
may involve this policy.
 
                
    
“3.           When an 
“occurrence” or “offense”, covered by this policy, would have been covered by 
“underlying insurance” but for the exhaustion of the applicable limit of such 
“underlying insurance” as a result of any “occurence(s)” or “offense(s)” to which this policy would 
have applied, we will have a duty to defend any “claims” or “suits” to which 
this policy applies.
 
                
    
“4.           When an 
“occurrence” or “offense”, covered by this policy, is not covered by “underlying 
insurance” or any other applicable insurance, we will have the duty to defend 
any “claims” or “suits” to which this policy applies.
 
                
    
“5.           When we have a 
duty to defend as described in 3. and 4. above, we will:
 
                
    “a. Defend any “claim” or “suit” against the insured 
seeking damages on account of “bodily injury”, “property damage”, “personal 
injury”, or “advertising injury” even if such “claim” or “suit” is groundless, 
false, or fraudulent;
 
                
    “b. Investigate, negotiate, 
and settle any “claims” or “suits” as we deem expedient. . . .”

[5] 
Ante at ___.

[6] 
Ante at ___ n.60.

[7] 
See Continental Am. Life Ins. Co., 416 S.W.2d 796, 797 (Tex. 1967) (per curiam); 
Sanders v. Aetna Life Ins. Co., 205 S.W.2d 43, 45 (Tex. 1947).

[8] 
Ante at ___ n.60.

[9] 
Excess Underwriters at Lloyd’s, London v. Frank’s Casing Crew & Rental 
Tools, Inc., ___ S.W.3d ___, ___ (Tex. 2008).

[10] Id. 
(quoting Fortis Benefits v. Cantu, 234 S.W.3d 642, 649 (Tex. 2007)).

[11] 896 F.2d 949, 955 (5th Cir. 
1990).

[12] Ante at ___ n.65 (quoting Olympia 
Wings, 896 F.2d at 955) (emphasis 
added).