TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




 

ON MOTION FOR REHEARING EN BANC








NO. 03-04-00813-CV






Appellants, Dr. Phillip Osborne and Deborah Osborne // 

Cross-Appellant, State Farm Lloyds


v.


Appellee, Jauregui, Inc. // Cross-Appellees, Dr. Phillip Osborne and Deborah Osborne






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT

NO. 99-08727, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING





D I S S E N T I N G O P I N I O N


 Because I would hold that the Osbornes are entitled to attorney's fees as prevailing
parties under the DTPA and that State Farm's claim for subrogation rights should be remanded to
the trial court for reconsideration in light of Fortis Benefits v. Cantu, 234 S.W.3d 642 (Tex. 2007),
I respectfully dissent.

Attorney's Fees

 The majority correctly states that a plaintiff "who is awarded actual damages under
the DTPA should also be awarded attorney's fees, even though the damage award is entirely offset
by an opposing claim." See McKinley v. Drozd, 685 S.W.2d 7, 10 (Tex. 1985). While McKinley
involved a DTPA claim offset by a counterclaim rather than settlements from other defendants, the
court emphasized the "legislative mandate to liberally construe the [DTPA] to protect consumers
from deceptive practices, and the legislative intent to provide consumers with an efficient and
economical means to seek redress for those deceptive practices." Id. at 9. 

 The Texas Supreme Court has not, however, ruled on whether the reasoning in
McKinley would apply in a situation where the damages owed by one defendant were entirely offset
by settlement amounts from other defendants. The appellate courts have been split in determining
whether a plaintiff "prevails" under the DTPA where settlement amounts from other defendants
exceed the judgment. The majority relies primarily on Hamra v. Gulden, 898 S.W.2d 16, 19
(Tex. App.--Dallas 1995, writ dism'd w.o.j.), which held that a plaintiff who sued two defendants
jointly and severally did not prevail on a DTPA claim where the settlement credit from one
defendant exceeded the damages found at trial, citing only Blizzard v. Nationwide Mutual Fire
Insurance Co., 756 S.W.2d 801, 806 (Tex. App.--Dallas 1988, no writ), to support this holding. 

 The payments made to the plaintiff prior to trial in Blizzard, however, constituted
insurance payments from her insurer. Id. at 806-07. The plaintiff sued her insurance company, but
the amount of damages found by the jury at trial did not exceed the total amount of insurance
payments paid to the plaintiff by the defendant prior to trial. These pretrial payments, made by the
defendant subject to the judgment rather than a settling party, resemble the insurance benefits paid
prior to trial by the defendant in Allstate Insurance Co. v. Bonner, 51 S.W.3d 289, 292 (Tex. 2001). 
The court ruled in Allstate that the plaintiff could not recover attorney's fees under the insurance
code because the judgment amount owed by a defendant insurance company was entirely offset by
benefits previously paid by that defendant. In cases where the amount of damages found by the jury
at trial is lower than payments previously paid to the plaintiff by the defendant to compensate for
such damages, it is reasonable to view the plaintiff as not having prevailed on a claim.

 In the present case, however, the jury did not find that Jauregui owed less in damages
than some amount that Jauregui had already paid to the Osbornes. Instead, the jury found Jauregui
responsible for $835,000 in damages, while Jauregui reaped the benefits of its refusal to settle by
offsetting the entire judgment with settlement funds paid by other defendants.

 I find the facts in the instant case to more closely resemble those in
Roberts v. Grande, 868 S.W.2d 956, 962 (Tex. App--Houston [14th Dist.] 1994, no writ), in which
the plaintiff was allowed an award of attorney's fees even though the judgment was entirely offset
by settlement amounts. "[A]pplying an offset from a previous settlement should not deprive a
consumer of its attorney's fees." Id. As a result, I would hold that the Osbornes qualify as prevailing
parties under the DTPA and therefore should be awarded attorney's fees, subject to the requirement
in Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 313-14 (Tex. 2006), that such fees be
segregated between recoverable and unrecoverable claims.

 The majority's holding that the Osbornes are not prevailing parties under the DTPA
essentially rewards Jauregui for refusing to negotiate a settlement. The Osbornes made a settlement
offer to Jauregui prior to filing suit in the amount of $866,000, which proved to be a reasonable
demand in light of the subsequent jury award, at a time when the Osbornes' attorney's fees had only
reached $22,000. Jauregui refused to make an offer of settlement within a reasonable range of that
demand and responded with a counter-offer of only $12,810, forcing the Osbornes to incur an
additional $1,127,641.30 in attorney's fees. (1) The Osbornes should not be penalized for proceeding
to trial when their good-faith attempt to negotiate a settlement prior to filing suit was refused.

 Awarding attorney's fees to the Osbornes before applying the settlement credit would
be consistent with the reasoning in McKinley and the purpose of the DTPA. The Texas legislature
determined that the DTPA "shall be liberally construed and applied to promote its underlying
purposes, which are to protect consumers against false, misleading, and deceptive business practices,
unconscionable actions, and breaches of warranty and to provide efficient and economical
procedures to secure such protection." Tex. Bus. & Com. Code Ann. § 17.44(a) (West 2002). 
Because I would hold that the Osbornes are prevailing parties under the DTPA, I dissent from the
majority's holding that the Osbornes are not entitled to attorney's fees. 

Subrogation

 The majority holds that State Farm's contractual right of subrogation displaces any
equitable considerations regarding whether the Osbornes have been "made whole" for their damages,
and further holds that even under an equitable determination of subrogation rights, State Farm is
entitled to the settlement proceeds because the Osbornes have already been "made whole" by
insurance payments totaling $1,874,687.28. 

 The majority cites the Texas Supreme Court's recent holding in Fortis Benefits,
234 S.W.3d at 650, that contract-based subrogation rights trump equitable considerations, which are
to be used by default in the absence of a contractual right to subrogation. The contract at issue in
Fortis established a right of subrogation, stating, "Upon payment of benefits, We will be subrogated
to all rights of recovery a Covered Person may have against any person or organization. . . . Such
right extends to the proceeds of any settlement or judgment; but is limited to the amount of benefits
We have paid." Id. at 645 n.11. The Texas Supreme Court noted that because the provision was
"not imprecise or ambiguous" and it gave Fortis "an unfettered right to recover the proceeds from the
settlement," equitable considerations must give way to the language of the contract. Id. at 650-51.

 However, the subrogation provision in the Osbornes' homeowners' insurance policy
with State Farm does not contain the type of precise and unambiguous language found in the Fortis
subrogation provision. The subrogation provision found in the Osbornes' policy reads in its entirety:


Subrogation. An insured may waive in writing before a loss all rights of recovery
against any person. If not waived, we may require an assignment of rights of
recovery for a loss to the extent that payment is made by us.


If an assignment is sought, an insured must sign and deliver all related papers and
cooperate with us.


 This provision, which merely states that State Farm "may" require an assignment of
rights, is significantly more ambiguous than the provision at issue in Fortis, which states that the
insurer "will be subrogated to all rights of recovery," including "the proceeds of any settlement or
judgment." Id. at 645 n.11 (original emphasis removed, emphases added).

 Because the trial court's order denying subrogation rights to State Farm was issued
prior to Fortis and thus before specific contractual subrogation rights were deemed controlling over
equitable principles, the trial court never had an opportunity to evaluate and interpret the subrogation
clause in the Osbornes' homeowners' policy. Therefore, the appropriate remedy would be to remand
to the trial court for a review of the subrogation provision in order to determine whether the language
is sufficiently precise and unambiguous to control over equitable subrogation principles, in light of
the Texas Supreme Court's holding in Fortis. 

 If the Osbornes' contractual subrogation provision was found to be too vague and
ambiguous to displace equitable considerations, I would point out that the trial court did not abuse
its discretion in denying subrogation rights to State Farm, in light of the deference afforded to a trial
court's equitable determination. In a determination of subrogation based purely on equitable factors,
"[a] trial court's balancing of the equities should not be disturbed on appeal unless a showing is
made that it would be inequitable to allow the judgment to stand." Esparza v. Scott & White Health
Plan, 909 S.W.2d 548, 552 (Tex. App.--Austin 1995, writ denied). 

 The trial court may have considered, for example, that State Farm, by arguing at trial
and on appeal that the Osbornes are not entitled to attorney's fees under the DTPA, asserted a
position that was adverse to the very parties whose interests State Farm, as an insurer, was expected
to protect. The fact that State Farm attempts to compromise the Osbornes' efforts to achieve the
fullest possible recovery suggests that equity should not favor State Farm in a determination of
subrogation rights.

 Furthermore, State Farm's statements at trial directly conflict with its argument on
appeal that the Osbornes were "made whole" because the jury returned a judgment of $835,158.78
in damages, and the total insurance payments received by the Osbornes exceed this amount. For
example, State Farm stated in its third amended petition in intervention that the Osbornes suffered
damages at least in the amount of $1,902,247.44. A judicial admission is conclusive upon the party
making it, relieves the opposing party's burden of proving the admitted facts, and bars the admitting
party from disputing it. Mendoza v. Fidelity & Guar. Ins. Underwriters, Inc., 606 S.W.2d 692, 694
(Tex. 1980). State Farm also put on an expert, Buddy Henderson, to testify that $1,477,351 was a
reasonable cost of repairs for the house and that he relied on this amount in determining that State
Farm should pay the full policy limits to the Osbornes. A party's testimony at trial will be treated
as a judicial admission if (1) the statement is deliberate, clear, and unequivocal, (2) the statement is
contrary to an essential fact embraced in the theory of recovery asserted by the party giving the
testimony, (3) the statement is not also destructive of the opposing party's theory of recovery, and
(4) it would be unjust to permit a party to recover after he has sworn himself out of court by clear
and unequivocal testimony. Id. Each of these factors is satisfied with reference to Henderson's
expert testimony that the cost of repairs alone could reasonably be $1,477,351. However, State Farm
asserts on appeal that the Osbornes' damages are limited to the amount of the jury verdict. Allowing
this drastic change in State Farm's damages assessment would create an environment in which
insured parties are unable to accept insurance payments from an insurer without fear that in the
future, the insurer will claim that it had overpaid and that the excess should be used to offset
settlement payments for mental anguish or other uncovered damages. These factors support the trial
court's equitable decision to deny subrogation to State Farm. 

 Even in light of the majority's holding that State Farm's contractual right to
subrogation controls over equitable considerations, the fact remains that State Farm failed to allocate
the settlement funds to covered versus uncovered losses. The subrogation provision in the Osbornes'
policy states that an assignment of rights may be required "to the extent that payment is made by
[State Farm]." In a claim for subrogation where settlement amounts are at issue, an insurer bears the
burden of showing what amount, if any, of the settlement amounts correspond to amounts paid by
it. Ortiz v. Great S. Fire & Cas. Ins. Co., 597 S.W.2d 342, 344 (Tex. 1980). Subrogation should
not be awarded if it is not clear what portion of the settlement is intended to compensate for covered
losses. Id. "In true subrogation cases, where the insurer is bringing the action against the third party,
or is participating in the insured's action against the third party, recovery by the insurer is generally
limited to the same elements as those for which it has made payment." Lee R. Russ & Thomas F.
Segalla, 16 Couch On Insurance § 226-52 (3d ed. 2000). It is not clear from the record which types
of losses were meant to be covered by the amounts that the Osbornes received from the settling
parties. "[T]he mere fact that an insured receives a recovery from another source may not establish
that the amounts recovered correspond to the same elements of loss for which the insured has already
recovered from the insurer." Id.

 While State Farm failed to allocate the settlement funds to covered versus uncovered
losses, we can assume that there was ample opportunity to make such an allocation because State
Farm asserts in its brief that it assisted "vigorously" in securing the settlements. There is no
evidence that the remaining settlement amounts are allocable to covered damages, rather than
uncovered damages such as mental anguish or attorney's fees. State Farm's failure to allocate
settlement funds is another issue that should be reviewed by the trial court on remand to determine
whether the settlement funds at issue actually reflect payments made by State Farm, as necessary to
qualify for assignment under the contractual subrogation provision. 

 Because I would reverse the trial court's denial of attorney's fees to the Osbornes and
remand State Farm's claim for subrogation rights to the trial court for reconsideration in light of
Fortis, I respectfully dissent.


 __________________________________________

 Diane Henson, Justice

Before Chief Justice Law, Justices Patterson, Puryear, Pemberton, Waldrop and Henson 

Filed: April 17, 2008
1. It is not uncommon for an attorney's fee award to exceed the damages recovered. Hoover
Slovacek L.L.P. v. Walton, 206 S.W.3d 557, 563 n.8 (Tex. 2006).