**Affirmed and Memorandum Opinion filed November 2, 2023**



In The

# Fourteenth Court of Appeals

---

## NO. 14-22-00660-CV

---

## WILLIAM SCOTT CARLSON, INDIVIDUALLY AND IN HIS REPRESENTATIVE CAPACITY AS TRUSTEE OF THE ALEXANDRIA AUGUSTA CARLSON TRUST, Appellant

## V.

## ROBERT H. SWEATT SR., INDIVIDUALLY AND IN HIS REPRESENTATIVE CAPACITY AS TRUSTEE OF THE ROBERT H. SWEATT AND MARY SWEATT REVOCABLE LIVING TRUST; AND ROBERT H. SWEATT, JR., Appellees

---

**On Appeal from the 21st District Court
Washington County, Texas
Trial Court Cause No. 37092**

---

## MEMORANDUM OPINION

Appellant William Scott Carlson, Individually and in his Representative Capacity as Trustee of the Alexandria Augusta Carlson Trust, appeals from the final judgment signed by the trial court enforcing a mediated settlement agreement. We affirm.

## Background

Carlson and appellees Robert H. Sweatt, Sr., Individually and in his Representative Capacity as Trustee of the Robert H. Sweatt and Mary Sweatt Revocable Living Trust, and Robert H. Sweatt, Jr., own adjoining properties in Washington County, Texas. Appellees had constructed a boundary fence around the entirety of their property. Carlson possessed an easement, called the Middle Easement, across appellees' land. Carlson also had another easement on land next to appellees' property that connected Carlson's property to Rehburg Road. Carlson built a bridge on the easement connecting his property to Rehburg Road. A dispute erupted when Carlson allegedly removed a portion of appellees' boundary fence near the bridge, cleared and bulldozed portions of appellees' property, and then constructed a boundary-line fence with brackets[1] on appellees' property. Appellees alleged that Carlson did this work without their knowledge or consent. Carlson, on the other hand, alleged that he had oral permission for each of his actions.

Carlson filed suit and appellees responded with counterclaims.[2] The parties eventually went to mediation. While the parties did not settle their dispute during the actual mediation, the mediator sent the parties a proposed settlement by email. The proposal contained the following terms:

1. Appellees would pay Carlson $22,000;

2. Carlson would completely remove the fence brackets on appellees' property;

---

[1] The fence brackets were also called braces.

[2] While the litigation was pending, Robert Sweatt, Sr. passed away. Dan Sweatt was appointed the independent executor of Sweatt, Sr.'s estate and appeared in this litigation to continue pursuing the claims initially filed by Sweatt, Sr. Individually and in his Representative Capacity as Trustee of the Robert H. Sweatt and Mary Sweatt Revocable Living Trust.

3. Carlson, upon request by appellees, would execute all necessary documents to abandon his claim to the Middle Easement on appellees' property and conveying the easement to appellees;

4. Carlson, through his legal counsel, would send "a copy the survey, including the surveyor's stamp," which defines the northern and western boundaries of appellees' property; and

5. The parties to the litigation would dismiss with prejudice all claims they had asserted or alleged against one another in the Lawsuit. It also called for the parties to execute a settlement agreement releasing all claims and causes of action arising from or related to any claim or cause of action asserted or alleged in the litigation. The proposal called for appellees' counsel to initially draft a settlement agreement and joint motion and order for dismissal with prejudice, which would then be sent to Carlson's counsel for review and comment.

6. Finally, the proposal required each party to bear its own costs of litigation, including attorney's fees.

The mediated settlement proposal concluded with: "Upon acceptance by all Parties, the agreement reflected in this mediator's proposal is fully binding, irrevocable, and enforceable."

The mediator's proposal was accepted by all parties to the litigation. The mediator notified the trial court that the parties "settled the case through the mediation process." The mediator then notified the parties that "we have a little work to get accomplished." The mediator observed that he had "purposefully left off specific times for performance and payment terms." He continued that all parties "came to the conclusion that the best way to complete the settlement was to

enter into a Rule 11 agreement sorting out the details." The mediator then made specific recommendations for those details. The mediator proposed that appellees make the $22,000 payment to Carlson's attorneys' trust account within 30 days, where it would be held until Carlson completed his settlement tasks. Next, he proposed that Carlson complete the other requirements under the settlement within 30 days as well. Finally, he proposed that appellees' counsel draft a settlement agreement and joint motion for dismissal and proposed order dismissing all claims with prejudice. Appellees' counsel agreed to perform this task. The matter languished for more than a month, spurring the mediator to inquire on the status of the settlement. Carlson's attorney responded that "yes, the mediator's proposal was accepted. [Appellees' counsel] did exactly what he was supposed to do. The delay is on our end. We have been communicating with [appellees' counsel], and should have this resolved shortly."

Once again, the matter languished. Appellees set the matter for a status conference on July 21, 2022. Carlson's attorney then informed the trial court that all parties had agreed to reschedule the status conference. Despite the delays, Carlson never informed the trial court that he objected to the mediated settlement agreement, nor that he had withdrawn his consent to it.

The status conference was rescheduled to July 28, 2022. Prior to that date, attorney George Slade filed an appearance as "additional counsel of record for [Carlson]." Carlson's initial attorney, Randy Howry, remained as co-counsel. The status conference occurred as scheduled and attorneys for all parties attended. During the July 28 hearing, the trial court set August 4 as the date for another hearing where the mediated settlement would be considered.

At the August 4 hearing, the trial court began by pointing out that "the matter before the Court today is the parties were all in Court last Thursday. There

4

was an issue on mediation. I gave them until today to resolve that issue or the Court would consider how to handle the matter if it wasn't resolved." The trial court continued that appellees' counsel was present, but he did "not see any other attorneys or parties present in the courthouse. This was his motion, as I recall, so you want to proceed on it?" Appellees' counsel did proceed. He informed the trial court that the delay in the settlement becoming final was caused by the timing and the specifics of the removal of the fence brackets. In the accepted mediated settlement proposal, Carlson had agreed that he would remove the fence brackets at his own cost. According to appellees' attorney, Carlson balked at paying to remove the entirety of the brackets, which were attached to the ground by drilling ten-feet-deep into bedrock and then cementing them in place. Appellees' attorney pointed out that Carlson had accepted the mediator's proposal which required him to remove the fence brackets without limitation. The trial court concluded that the settlement agreement required the removal of the fence brackets, including all subsurface materials, within 30 days of the signing of the final judgment. The trial court then ordered that all of the remaining proposals initially proposed by the mediator and accepted by the parties, would be included in the final settlement. The trial court set dates for each to be accomplished. The trial court signed the final judgment about a week later. Carlson did not file a motion for new trial. This appeal followed.

## ANALYSIS

### I. The trial court did not abuse its discretion when it signed a final judgment enforcing the mediated settlement agreement.

Carlson initially argues that the trial court abused its discretion when it enforced the mediated settlement agreement because "the parties had not consented to all of the required terms of the Order, including the deadlines for compliance

5

and what constituted the 'Brackets' for removal."  In his third issue, Carlson asserts that the trial court erred by "unilaterally adding terms" to the mediated settlement agreement "without legally sufficient evidentiary support."

We begin by observing that Carlson has not pointed to anything in the appellate record establishing that he withdrew his consent to the mediated settlement agreement prior to the trial court signing the final judgment.  *See Quintero v. Jim Walter Homes, Inc.*, 442, 444 (Tex. 1983) (stating that a party has a right to revoke acceptance of settlement agreement at any time before rendition of judgment); *cf. Sampson v. Ayala*, No. 14-08-01002-CV, 2010 WL 1438932, at *5 (Tex. App.—Houston [14th Dist.] April 13, 2010, no pet.) (mem. op.) ("It is undisputed that Ayala revoked his consent to some or all provisions of the [settlement agreement] prior to trial and prior to the trial court's judgment. Although Sampson complains that the trial court abused its discretion in allowing Ayala to withdraw his consent to the [settlement agreement], a party can withdraw consent to a Rule 11 agreement at any time before rendition of judgment.").  Because Carlson lodged no objection or otherwise informed the trial court that he had withdrawn his consent to the mediated settlement agreement, we conclude that he waived any complaint that he may have had in the trial court.  *Allright, Inc. v. Pearson*, 735 S.W.2d 240, 240 (Tex. 1987).  In that situation, the trial court has a ministerial duty to enforce the mediated settlement agreement.  *See Fortis Benefits v. Cantu*, 234 S.W.3d 642, 651 (Tex. 2007) (stating that trial courts have ministerial duty to enforce valid Rule 11 agreements); *Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex. 1995) (stating that a trial court may render judgment on a settlement agreement if no party to the agreement has withdrawn consent).

The fact that the trial court inserted specific deadlines into the final judgment for the parties to perform the tasks required by the settlement agreement

6

does not change this analysis. *See Fischer v. Martin*, 479 S.W.3d 231, 240 (Tex. 2016) (stating that courts may imply terms such as reasonable time for payment or performance); *Krause v. Chen*, No. 05-21-00470-CV, 2023 WL 2596073, at *3 (Tex. App.—Dallas March 22, 2023, no pet.) (mem. op.) ("With respect to the absence of a due date for the Krauses' rent payment, an agreement is not unenforceable simply because it fails to state a date for performance. Where no time for performance is stated in a contract, the law will imply a reasonable time."). In making his argument, Carlson overlooks the fact that, after the parties had accepted the mediator's initial proposed settlement, the mediator sent out a proposed timetable for performing each contractual task. This timeline included thirty days to remove the fence and fence brackets. The trial court did not abuse its discretion when it included the same thirty-day time limit for removal of the fence and fence brackets in the final judgment. *See Fortis Benefits*, 234 S.W.3d at 651. The same is true of the remaining tasks to be performed to fulfill the settlement agreement, including the requirement that Carlson remove the entirety of the fence and fence brackets, including all subsurface materials used to anchor the fence on appellees' property. *See Fischer*, 479 S.W.3d at 239 ("Thus, if the parties clearly intended to agree and a reasonably certain basis for granting a remedy exists, we will find the contract terms definite enough to provide that remedy.") (internal quotations omitted).

Turning to Carlson's third issue, he asserts that the trial court erred when it added terms to the mediated settlement agreement because the additions were not supported by legally sufficient pleadings and evidence. Having reviewed the record, we conclude that appellees' Bench Brief to Enforce Settlement Agreement was a sufficient pleading to support appellees' request for relief. *See Krause*, 2023 WL 2596073, at *2 (stating that "a motion to enforce a Rule 11 settlement

7

agreement is a sufficient pleading upon which the trial court may render judgment."). We also conclude that the evidence is sufficient because appellees attached the emailed correspondence sent by the mediator and parties to the litigation establishing that (1) the mediator submitted a proposed settlement, (2) the parties agreed to the proposed settlement, (3) the mediator submitted specific deadlines for performance of the settlement agreement, and (4) the parties emailed their agreement with the proposed performance timeline. We conclude this is legally sufficient evidence to support the trial court's judgment enforcing the mediated settlement agreement. We overrule Carlson's first and third issues on appeal.

## II. Carlson had adequate notice of all proceedings.

In his second issue on appeal Carlson argues that he received insufficient notice of the August 4 hearing during which the trial court announced the intention to sign a judgment enforcing the parties' settlement agreement. Because the record establishes that Carlson received notice of the August 4 hearing in open court on July 28, we disagree.

Here, an examination of the record reveals that the trial court scheduled, at appellees' request, a status conference to be held on July 21, 2022. Notice of this hearing was served on July 8, 2022. The record further reveals that Carlson's attorney contacted the trial court seeking to reschedule the status conference to July 28, 2022. When the trial court agreed, Carlson's counsel prepared and served an amended notice of hearing on all parties informing them that the status conference would occur on July 28. The record also establishes that Carlson's counsel attended the July 28 status conference during which the trial court scheduled another hearing for August 4.

Initially, Carlson argues that he received insufficient notice of the August 4

8

hearing because, in his view, appellees were required to file a motion for summary judgment to enforce the mediated settlement agreement because he had withdrawn his consent. *See Padilla*, 907 S.W.2d at 462 (stating that an action to enforce a settlement agreement where consent has been withdrawn "must be based on proper pleading and proof" and is normally resolved through a motion for summary judgment). We have already determined that Carlson had not notified the trial court that he had withdrawn his consent to the mediated settlement agreement. Because Carlson had not given any indication that he had, there was no need for appellees to file a motion for summary judgment to enforce the mediated settlement agreement and no requirement that Carlson receive 21 days' notice of the hearing. *See Martin v. Black*, 909 S.W.2d 192, 196 (Tex. 1995) (stating that a trial court may only enter judgment on a mediated settlement agreement where one of the parties contests their intent to be bound only by using either a motion for summary judgment or a jury or bench trial); *Krause*, 2023 WL 2596073, at *2 (stating that "a motion to enforce a Rule 11 settlement agreement is a sufficient pleading upon which the trial court may render judgment.").

Rule 21(a) of the Texas Rules of Civil Procedure requires that a party receive at least three days' notice of a hearing. *See* Tex. R. Civ. P. 21(b). Carlson received initial notice of the status conference on July 8. We conclude that he had sufficient notice of the initial setting for the status conference and each subsequent setting to appear and defend his interests. *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983); *see Welborn-Hosier v. Hosier*, 870 S.W.2d 323, 328 (Tex. App.—Houston [14th Dist.] 1994, no writ) ("The law presumes that a trial court will hear a case only after proper notice to the parties. Appellant has the burden of rebutting this presumption by affirmatively showing lack of notice."). The fact Carlson's counsel did not appear at the August 4 hearing does not change

9

this result. Further, Carlson did not file a motion for new trial with evidence arguing that he had not received notice, nor that he had withdrawn his consent to the mediated settlement agreement. *See Smith v. Mike Carlson Motor Co.*, 918 S.W.2d 669, 672 (Tex. App.—Fort Worth 1996, no writ) (stating in a summary judgment case that, to preserve error for appeal, a nonmovant asserting lack of notice and failure to appear must file a motion for new trial supported by affidavits to establish facts outside the knowledge of the trial court). We overrule Carlson's second issue on appeal.

## CONCLUSION

Having overruled Carlson's issues on appeal, we affirm the trial court's final judgment.

/s/     J. Zimmerer

Panel consists of Justices Wise, Zimmerer, and Poissant.