# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH


## NO. 2-06-104-CV

CLASSIC CENTURY, INC. F/K/A                                                            APPELLANT
CLASSIC CENTURY HOMES, INC.

V.

DEER CREEK ESTATES, INC.,                                                              APPELLEES
DARSONA ENTERPRISES D/B/A
ALLIANCE HOMES, AND KENMARK
HOMES, L.P., A TEXAS LIMITED
PARTNERSHIP

------------

### FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

I.      **Introduction**

Appellant Classic Century, Inc., a homebuilder, sued Appellee Deer Creek

Estates, Inc., a real estate developer, seeking specific performance and

---

[1] *See* TEX. R. APP. P. 47.4.

damages for breach of a contract, which by its terms allowed Classic to purchase lots of land from Deer Creek. Classic's second and third amended petitions added Appellees Darsona Enterprises, Inc. d/b/a Alliance Homes and Kenmark Homes, L.P., other builders who ultimately purchased some of these lots from Deer Creek. Classic appeals from summary judgment in favor of Appellees.[2] We affirm.

## II. Factual and Procedural Background

On November 7, 2000, Classic entered into a contract with Deer Creek to purchase eighty-five lots of land in Crowley, Texas, known as Phase Five and Phase Six of Deer Creek Estates. The contract provided that a number of events had to occur in order for the lots to be considered "complete" for Classic to purchase them from Deer Creek. These events included acceptance by the city of the streets and issuance of building permits; receipt of a letter from TXU Electric stating that the subdivision was "hot" and service was available to all lots; the purchase of a storm and water pollution prevention plan by Deer Creek; "pinning" of the corners of all lots; none of the lots being within the flood plain; and notification by Deer Creek of local telephone and cable

---

[2] Deer Creek's president Alton Isbell, who is not a party to this appeal, was also added to the underlying suit in Classic's third amended petition. Classic sued Isbell for fraud in connection with the contract that is at issue in this appeal. The trial court severed Classic's claim against Isbell as well as counterclaims by Appellees.

companies that the subdivision lots were ready.  Classic was to purchase the lots in stages.  Deer Creek would inform Classic which lots were completed and Classic would have ten days to buy the completed lots.

Paragraph 21 of the contract sets forth the following relevant provision:

21.  **No recordation.**  [Classic] shall neither record this Contract nor a memorandum of the terms hereof in any public records without the prior written consent to such recordation from [Deer Creek].  Any unauthorized recording of the Contract or memorandum of the terms hereof . . . shall constitute an event of default by [Classic and] shall immediately and automatically terminate [the contract] and all Earnest Money deposited by [Classic] hereunder shall be retained by [Deer Creek] as liquidated damages in accordance with the terms hereof.  Further, the placing of record by [Deer Creek] of an affidavit reciting the unauthorized recording of this Contract, or a memorandum of the terms hereof, by [Classic] and the subsequent termination of this Contract due to such unauthorized recording shall constitute full and sufficient evidence of the termination of this Contract.

Around December 6, 2001, Deer Creek sent a letter to Classic stating that the lots in Phase Five were ready for purchase.  Per the contract, Deer Creek informed Classic that Classic had ten days to fund the purchase of these lots.  Classic contends that the parcels were not "complete" because they had not been pre-drenched, drainage swales had not been cut, and Deer Creek had not completed all the events described above.  The ten days passed without Classic purchasing the lots in Phase Five.

On December 21, 2001, Deer Creek sent a letter to Classic stating that Classic had defaulted on the agreement by failing to close and that Classic's rights to the contract were terminated. Classic's president responded with a letter to Deer Creek's president stating that the above listed events had not been completed on the lots and that due to these defects, it was Deer Creek who had failed to deliver the lots as required by the contract. In this same letter, however, Classic's president notified Deer Creek of its election to continue under the terms of the contract, stating he was attempting to work with Deer Creek regarding the purchase of these lots, even though he considered the lots incomplete for purchase, and that he would like to discuss the matter before "the attorneys get involved."

Classic contends that Deer Creek revealed to Classic that it intended to sell these same lots to other buyers. Ostensibly driven by that belief, Classic recorded the contract in the Tarrant County deed records on January 14, 2002. Classic's attorney informed Deer Creek of that recordation and of its intentions to pursue litigation to enforce the contract. On January 17, 2002, Classic filed suit against Deer Creek seeking specific performance of the contract and attached a copy of the contract to its petition in which it alleged failure of Deer Creek to comply with the provisions of the contract to complete lots in Phase Five and failure to tender certain lots with clear title. On January 25, 2002,

4

Classic filed a notice of *Lis Pendens* and again attached a copy of the contract as an exhibit.

On the same day, Deer Creek filed an affidavit in the Tarrant County deed records reciting that Classic had recorded the contract in the county deed records without Deer Creek's consent, which automatically terminated the contract under the language of paragraph 21 of the contract.

According to Classic, at all times Classic repeatedly advised Deer Creek of Classic's intention to enforce the contract and close on all eighty-five lots in Phase Five and Phase Six as soon as Deer Creek had them complete. Both parties agree that a number of these lots in Phase Five were, in fact, eventually delivered with improvements as specified in the contract and purchased by Classic in March and July of 2002. After the March purchases, but before the July purchases, Classic dismissed its previous lawsuit against Deer Creek.

Classic contends that on April 10, 2003, Deer Creek made a written demand on Classic to purchase lots in Phase Six that Classic again considered incomplete, and that Deer Creek informed Classic it had ten days to respond. And, Classic contends, Classic received a letter from Deer Creek on April 16, 2003, in which Deer Creek stated the contract was out of date and either needed to be updated or terminated.

In February 2005, after numerous inquiries by Classic to Deer Creek regarding the status of the lots, Classic again recorded the contract in the Tarrant County deed records. Deer Creek responded by again recording its affidavit containing language from paragraph 21 of the contract and stating that the contract was terminated by Classic's unauthorized recording of the contract in the deed records. Thereafter, on April 13, 2005, and April 15, 2005, Deer Creek sold several lots in Phase Six to Appellees Kenmark and Alliance.

On April 22, 2005, Classic filed the lawsuit underlying this appeal claiming that Deer Creek had breached the contract and seeking specific performance of the contract as to the lots in Phase Six and, alternatively, for damages, together with attorneys fees. Classic's second and third amended petitions added Appellees Kenmark and Alliance, claiming tortious interference with an existing contract. On May 10, 2005, Classic filed another notice of *Lis Pendens* attaching the contract as an exhibit.

Deer Creek filed a motion for traditional summary judgment claiming that Classic had terminated the contract by its unauthorized recording of the contract in the Tarrant County deed records without prior written consent of Deer Creek, that Classic had waived any right to damages under paragraph 13

6

of the contract, and that since Classic had terminated the contract it could not claim the remedy of specific performance under the contract.[3]

Classic responded by filing a cross-motion for summary judgment and response, claiming that Deer Creek's motion failed as a matter of law because it was Deer Creek who first breached the contract and that Classic was entitled to partial summary judgment. The trial court entered an order granting Deer Creek's motion. Appellees Alliance and Kenmark filed their own motions for summary judgment, which the trial court also granted. This appeal followed.

III. Discussion

In four issues, Classic argues that the trial court erred by granting summary judgment in favor of Deer Creek. In its first issue, Classic contends that Deer Creek first breached the contract and it was only after Deer Creek failed to deliver the Phase Five lots that Classic recorded the contract in the county deed records. Classic argues that Deer Creek again breached the contract by failing to deliver the lots in Phase Six and by selling them to other builders and it was only after Deer Creek's second breach that Classic filed the contract again in the deed records. Therefore, Classic argues, the trial court's

---

[3] Paragraph 13 of the contract provided that, upon default by Deer Creek, Classic could either terminate the contract and receive return of the note previously deposited or seek specific performance "as its sole and exclusive remedy, [Classic] hereby waiving any right to seek damages from [Deer Creek] for any breach of the terms of this contract."

summary judgment based on Classic's breach of the contract by filing the contract publicly cannot be sustained. Second, Classic argues, paragraph 21 of the contract is unenforceable because it violates public policy. Third, Classic argues that there are genuine issues of material fact concerning whether Classic failed to comply with the contract. Fourth, Classic argues that because the trial court erred in granting summary judgment in favor of Deer Creek, the summary judgments in favor of Alliance and Kenmark should also be reversed.

## A. Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Sw. Elec. Power Co.,* 73 S.W.3d at 215.

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Evidence that favors the movant's

8

position will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). But we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005).

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *Clear Creek Basin*, 589 S.W.2d at 678.

A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

**B.      Breach of Contract**

In its first issue Classic argues that, by demanding that Classic close on the lots in Phase Five without the improvements required by the contract and by sending a notice of default when the property was no more than unfinished lots, Deer Creek breached the contract first. Therefore, Classic argues, Deer Creek cannot rely upon any acts of Classic that occurred after this initial breach by Deer Creek as grounds for summary judgment.

Generally, when one party to a contract commits a material breach, the other party is discharged or excused from further performance. *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex. 2004). The non-breaching party must elect between two courses of action, either continuing performance or ceasing performance. *Gupta v. Eastern Idaho Tumor Inst., Inc.*, 140 S.W.3d 747, 756 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). If the non-breaching party elects to treat the contract as continuing and insists the party in default continue performance, the previous breach constitutes no excuse for nonperformance on the part of the party not in default and the contract continues in force for the benefit of both parties. *Id.* Thus, treating a contract as continuing—after a breach—deprives the non-breaching party of any excuse for terminating its own performance. *Id.* at 757.

10

Although the non-breaching party must elect between continuing or ceasing performance, the election does not affect whether the non-breaching party can sue for a former or future breach. *Cal-Tex Lumber Co., Inc. v. Owens Handle Co., Inc.*, 989 S.W.2d 802, 812 (Tex. App.—Tyler 1999, no pet.). The election affects only whether the non-breaching party itself is then required to perform fully. *Gupta*, 140 S.W.3d at 757 n.7. If the non-breaching party continues performance, it obligates itself to fully perform. *Id.*

Deer Creek responds to Classic's argument (that it was Deer Creek who first breached the contract) by asserting that, even assuming Deer Creek breached first, Classic had the choice of either continuing performance or ceasing performance. And, Deer Creek argues, Classic elected to treat the contract as continuing; thus, the alleged prior breach can no longer constitute an excuse for nonperformance. Therefore, Deer Creek argues, when Classic thereafter recorded the contract the contract in the deed records, it then breached the continuing contract, as the result of which, the contract terminated by its own terms and Deer Creek was free to sell the property. We agree.

Even assuming that Deer Creek breached the contract by failing to deliver the lots in Phase Five, Classic was put to an election of either continuing performance or ceasing performance. *Gupta*, 140 S.W.3d at 756. Classic has

11

maintained all along and even in its brief to this court that "[a]t all times, Classic repeatedly advised Deer Creek of Classic's intention to enforce" the contract. Given this posture, Classic cannot use the alleged previous breach by Deer Creek as excuse for its own subsequent breach. *Id.* We hold that when Classic recorded the contract in the deed records, Classic terminated the contract. Deer Creek was then free to file affidavits affirming the contract had been terminated and free to sell the lots to other purchasers. We hold that the trial court did not err in granting summary judgment in favor of Deer Creek based on Classic's breach of the contract. We overrule Classic's first issue.

## C.    Paragraph 21 and Public Policy

In its second issue, Classic argues that Paragraph 21—which terminates the contract if Classic records the contract of public record—is void as a matter of public policy because Classic could not have an adequate remedy under Texas law if it were contractually prevented from filing a lawsuit, and recording the contract in relation to that lawsuit, in order to enforce its right of specific performance.

Texas courts have long recognized Texas' strong public policy in favor of preserving the freedom of contract. *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 664 (Tex. 2008). Texas courts also recognize the importance of the "indispensable partner" to the freedom of contract—contract

12

enforcement. *Id*. Freedom of contract is not unbounded. *Id*. As a general rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy. *Id*. Pertinent to this case, where a valid contract prescribes particular remedies or imposes particular obligations, equity generally must yield unless the contract violates positive law or offends public policy. *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 648–49 (Tex. 2007). Texas' public policy is embodied in its constitution, statutes, and judicial decisions. *Texas Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 250 (Tex. 2002). Without clear legislative intent to prohibit agreements, and absent any claim of fraud, duress, accident, mistake, or failure or inadequacy of consideration, Texas courts generally decline to declare contractual agreements void on public policy grounds. *Fairfield*, 246 S.W.3d at 664.

Classic contends that, in order to exercise the remedy of specific performance and to protect its property rights under the contract, it had to file two suits for specific enforcement of the contract and also file two notices of *Lis Pendens* to put the public on notice of litigation concerning the property at issue. Classic reasons that because it had to file a lawsuit to enforce its rights of specific performance, it was required by the best evidence rule to prove the contents of the writing by publicly filing the contract. Therefore, Classic argues, paragraph 21 violates Texas Rules of Evidence in that paragraph 21 of

13

the contract prevents Classic from attaching to its lawsuit the best obtainable evidence of the contracts contents—the contract itself.

Deer Creek counters that Classic's argument is disingenuous because Texas Rules of Evidence do not require a filing of the contract with its petition and, regardless of what the Texas Rules of Evidence dictate, Classic recorded the contract in the county deed records *prior* to filing its lawsuit. Further, Deer Creek argues, Classic had the option of filing a lawsuit and having the contract evaluated *in camera*, therefore still allowing Classic to seek specific performance without violating paragraph 21 of the contract. We agree with Deer Creek.

Nothing in the Texas Rules of Evidence requires the *public recording* of documents like Classic did when it filed the contract in the Tarrant County deed records without Deer Creek's permission in violation of paragraph 21 of the contract. *See* TEX. R. EVID. 1002. Furthermore, Classic could have, as Deer Creek argues, maintained the confidentiality of the contract without publicly filing the contract and still sought remedy in court by either seeking an *in camera* inspection of the contract or having the trial court place the contract under seal. *See In re Dalco*, 186 S.W.3d 660, 664 (Tex. App.—Beaumont, 2006, orig. proceeding, mand. denied) (conducting *in camera* review of employment contracts); *see also* TEX. R. CIV. P. 76a. Finally, we note that Deer

Creek's stated ground in its motion for summary judgment was the recording of the contract in the deed records, not the filing of a copy of it with the petition or notice of *Lis Pendens*. We overrule Classic's second issue.

**D. No Genuine Issues of Material Fact Exist**

In its third issue, Classic argues that there are genuine issues of material fact concerning whether Classic failed to comply with the contract. Specifically, Classic contends that fact questions remain concerning: (1) whether Deer Creek breached the contract when it demanded Classic close on alleged incomplete lots; (2) whether Deer Creek was the first to breach the contract; (3) whether Deer Creek made a valid tender under the contract prior to its attempts to terminate the contract; (4) whether Deer Creek forced Classic into recording the contract by sending a letter that the contract had been terminated; (5) whether Deer Creek negotiated sales of the properties in question while assuring Classic that it would honor the contract; and (6) whether paragraph 21 is enforceable as a matter of law. We are unpersuaded that any of these create a genuine issue of material fact.

We have already held that, even assuming Deer Creek breached prior to Classic's recording of the contract publically in violation of paragraph 21,

15

Classic cannot use the previous breach by Deer Creek as an excuse for its own breach after electing to continue the contract. This disposes of what Classic contends are fact questions as to (1) through (4) listed above. The above numbered (5) potential fact question is disposed of because we have already held that once Classic recorded the contract in violation of paragraph 21, Deer Creek was no longer bound by the contract and free to sell the properties to other potential buyers. And the above numbered (6) is a question of law that we have already disposed of by overruling Classic's second issue. We therefore overrule Classic's third issue.

### E. Appellees Alliance and Kenmark

In its fourth issue, Classic argues that Alliance and Kenmark were not entitled to summary judgment concerning Classic's claim that those parties tortiously interfered with the existing contract by purchasing lots covered by the contract.

The elements of tortious interference with a contract are: (1) the existence of a contract subject to interference; (2) willful and intentional interference; (3) interference that proximately caused damage; and (4) actual damage or loss. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997). A party to a contract has a cause of action for tortious interference against a third person who wrongly induces another contracting

16

party to breach the contract. *Holloway v. Skinner*, 898 S.W.2d 793, 794 (Tex. 1995).

In this case, it was Classic that breached the contract. As stated earlier, even assuming that Deer Creek's previous sending of letters to Classic that the contract was terminated constituted a breach, Classic elected to continue under the contract. *See Gupta,* 140 S.W.3d at 756. Once Classic elected to continue with the contract, Classic was not excused from its own duties. By filing the contract in the deed records a second time after continuing the contract, Classic terminated the contract by the terms of paragraph 21. As a matter of law, once the contract terminated, there was no longer an existing contract with which Alliance and Kenmark could interfere by later purchasing the lots. *See Ice Bros., Inc. v. Bannowsky*, 840 S.W.2d 57, 63 (Tex. App.—El Paso 1992, no writ) (holding once oil and gas lease terminated for lack of production, there was no longer a contractual relationship with which appellant could tortiously interfere).

For the foregoing reasons, the trial court correctly granted summary judgment in favor of Alliance and Kenmark as to Classic's claim for tortious interference with an existing contract. We overrule Classic's fourth issue.

## IV. Conclusion

Having overruled all of Classic's issues, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL:     GARDNER, WALKER, and MCCOY,JJ.

WALKER, J. concurs without opinion.

DELIVERED:  August 14, 2008