COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-06-104-CV

 

 

CLASSIC CENTURY, INC. F/K/A                                             APPELLANT

CLASSIC
CENTURY HOMES, INC.

 

                                                   V.

 

DEER CREEK ESTATES, INC.,                                                 APPELLEES

DARSONA
ENTERPRISES D/B/A 

ALLIANCE
HOMES, AND KENMARK 

HOMES,
L.P., A TEXAS LIMITED 

PARTNERSHIP

 

                                              ------------

 

           FROM
THE 352ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.      Introduction









Appellant Classic Century,
Inc., a homebuilder, sued Appellee Deer Creek Estates, Inc., a real estate
developer, seeking specific performance and damages for breach of a contract,
which by its terms allowed Classic to purchase lots of land from Deer
Creek.  Classic=s second and third amended petitions added Appellees Darsona
Enterprises, Inc. d/b/a Alliance Homes and Kenmark Homes, L.P., other builders
who ultimately purchased some of these lots from Deer Creek.  Classic appeals from summary judgment in
favor of Appellees.[2]  We affirm. 


II.     Factual
and Procedural Background








On November 7, 2000, Classic
entered into a contract with Deer Creek to purchase eighty-five lots of land in
Crowley, Texas, known as Phase Five and Phase Six of Deer Creek Estates.  The contract provided that a number of events
had to occur in order for the lots to be considered Acomplete@ for Classic
to purchase them from Deer Creek.  These
events included acceptance by the city of the streets and issuance of building
permits; receipt of a letter from TXU Electric stating that the subdivision was
Ahot@ and service
was available to all lots; the purchase of a storm and water pollution prevention
plan by Deer Creek; Apinning@ of the corners of all lots; none of the lots being within the flood
plain; and notification by Deer Creek of local telephone and cable companies
that the subdivision lots were ready. 
Classic was to purchase the lots in stages.  Deer Creek would inform Classic which lots
were completed and Classic would have ten days to buy the completed lots. 

Paragraph 21 of the contract sets forth the following relevant
provision:

 

21.   No recordation.    [Classic]
shall neither record this Contract nor a memorandum of the terms hereof in any
public records without the prior written consent to such recordation from [Deer
Creek].  Any unauthorized  recording of the Contract or memorandum of
the terms hereof . . . shall constitute an event of default by
[Classic and] shall immediately and automatically terminate [the contract] and
all Earnest Money deposited by [Classic] hereunder shall be retained by [Deer
Creek] as liquidated damages in accordance with the terms hereof.  Further, the placing of record by [Deer
Creek] of an affidavit reciting the unauthorized recording of this Contract, or
a memorandum of the terms hereof, by [Classic] and the subsequent termination
of this Contract due to such unauthorized recording shall constitute full and
sufficient evidence of the termination of this Contract.

 

Around December 6, 2001, Deer
Creek sent a letter to Classic stating that the lots in Phase Five were ready
for purchase.  Per the contract, Deer
Creek informed Classic that Classic had ten days to fund the purchase of these
lots.  Classic contends that the parcels
were not Acomplete@ because they had not been pre-drenched, drainage swales had not been
cut, and Deer Creek had not completed all the events described above.  The ten days passed without Classic
purchasing the lots in Phase Five. 








        On December 21, 2001, Deer Creek sent a
letter to Classic stating that Classic had defaulted on the agreement by
failing to close and that Classic=s rights to the contract were terminated.  Classic=s president responded with a letter to Deer Creek=s president stating that the above listed events had not been
completed on the lots and that due to these defects, it was Deer Creek who had
failed to deliver the lots as required by the contract.  In this same letter, however, Classic=s president notified Deer Creek of its election to continue under the
terms of the contract, stating he was attempting to work with Deer Creek
regarding the purchase of these lots, even though he considered the lots
incomplete for purchase, and that he would like to discuss the matter before Athe attorneys get involved.@        








Classic contends that Deer
Creek revealed to Classic that it intended to sell these same lots to other
buyers.  Ostensibly driven by that
belief, Classic recorded the contract in the Tarrant County deed records on January
14, 2002. Classic=s attorney
informed Deer Creek of that recordation and of its intentions to pursue
litigation to enforce the contract.  On
January 17, 2002, Classic filed suit against Deer Creek seeking specific
performance of the contract and attached a copy of the contract to its petition
in which it alleged failure of Deer Creek to comply with the provisions of the
contract to complete lots in Phase Five and failure to tender certain lots with
clear title.  On January 25, 2002, Classic
filed a notice of Lis Pendens  and
again attached a copy of the contract as an exhibit. 

On the same day, Deer Creek
filed an affidavit in the Tarrant County deed records reciting that Classic had
recorded the contract in the county deed records without Deer Creek=s consent, which automatically terminated the contract under the
language of paragraph 21 of the contract. 


According to Classic, at all
times Classic repeatedly advised Deer Creek of Classic=s intention to enforce the contract and close on all eighty-five lots
in Phase Five and Phase Six as soon as Deer Creek had them complete.  Both parties agree that a number of these
lots in Phase Five were, in fact, eventually delivered with improvements as
specified in the contract and purchased by Classic in March and July of
2002.  After the March purchases, but
before the July purchases, Classic dismissed its previous lawsuit against Deer
Creek. 

Classic contends that on April
10, 2003, Deer Creek made a written demand on Classic to purchase lots in Phase
Six that Classic again considered incomplete, and that Deer Creek informed
Classic it had ten days to respond.  And,
Classic contends, Classic received a letter from Deer Creek on April 16, 2003,
in which Deer Creek stated the contract was out of date and either needed to be
updated or terminated.   








In February 2005, after
numerous inquiries by Classic to Deer Creek regarding the status of the lots,
Classic again recorded the contract in the Tarrant County deed records.  Deer Creek responded by again recording its
affidavit containing language from paragraph 21 of the contract and stating
that the contract was terminated by Classic=s unauthorized recording of the contract in the deed records.  Thereafter, on April 13, 2005, and April 15,
2005, Deer Creek sold several lots in Phase Six to Appellees Kenmark and
Alliance.  

On April 22, 2005, Classic
filed the lawsuit underlying this appeal claiming that Deer Creek had breached
the contract and seeking specific performance of the contract as to the lots in
Phase Six and, alternatively, for 
damages, together with attorneys fees. 
Classic=s second and
third amended petitions added Appellees Kenmark and Alliance, claiming tortious
interference with an existing contract. 
On May 10, 2005, Classic filed another notice of Lis Pendens attaching
the contract as an exhibit.  








Deer Creek filed a motion for
traditional summary judgment claiming that Classic had terminated the contract
by its unauthorized recording of the contract in the Tarrant County deed
records without prior written consent of Deer Creek, that Classic had waived
any right to damages under paragraph 13 of the contract, and that since Classic
had terminated the contract it could not claim the remedy of specific
performance under the contract.[3]  

Classic responded by filing a
cross-motion for summary judgment and response, claiming that Deer Creek=s motion failed as a matter of law because it was Deer Creek who first
breached the contract and that Classic was entitled to partial summary
judgment.  The trial court entered an
order granting Deer Creek=s
motion.  Appellees Alliance and Kenmark
filed their own motions for summary judgment, which the trial court also
granted.  This appeal followed. 

III.     Discussion








In four issues, Classic
argues that the trial court erred by granting summary judgment in favor of Deer
Creek.  In its first issue, Classic
contends that Deer Creek first breached the contract and it was only after Deer
Creek failed to deliver the Phase Five lots that Classic recorded the contract
in the county deed records.  Classic
argues that Deer Creek again breached the contract by failing to deliver the
lots in Phase Six and by selling them to other builders and it was only after
Deer Creek=s second
breach that Classic filed the contract again in the deed records.  Therefore, Classic argues, the trial court=s summary judgment based on Classic=s breach of the contract by filing the contract publicly cannot be
sustained.  Second, Classic argues,
paragraph 21 of the contract is unenforceable because it violates public
policy.  Third, Classic argues that there
are genuine issues of material fact concerning whether Classic failed to comply
with the contract.  Fourth, Classic
argues that because the trial court erred in granting summary judgment in favor
of Deer Creek, the summary judgments in favor of Alliance and Kenmark should
also be reversed.

A.     Standard of Review

In a summary judgment case,
the issue on appeal is whether the movant met the summary judgment burden by
establishing that no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.  Sw. Elec. Power
Co., 73 S.W.3d at 215.








When reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant, and we
indulge every reasonable inference and resolve any doubts in the nonmovant=s favor.  Valence Operating
Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  Evidence that favors the movant=s position will not be considered unless it is uncontroverted.  Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).  But we must consider whether reasonable and
fair-minded jurors could differ in their conclusions in light of all of the
evidence presented.  See Wal-Mart
Stores, Inc. v. Spates, 186 S.W.3d 566, 568 (Tex. 2006); City of Keller
v. Wilson, 168 S.W.3d 802, 822B24 (Tex. 2005).

The summary judgment will be
affirmed only if the record establishes that the movant has conclusively proved
all essential elements of the movant=s cause of action or defense as a matter of law.  Clear Creek Basin, 589 S.W.2d at 678.

A defendant who conclusively
negates at least one essential element of a cause of action is entitled to
summary judgment on that claim.  IHS
Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d
794, 798 (Tex. 2004).  Once the defendant
produces sufficient evidence to establish the right to summary judgment, the
burden shifts to the plaintiff to come forward with competent controverting
evidence raising a genuine issue of material fact with regard to the element
challenged by the defendant.  Centeq
Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).

B.     Breach of Contract








In its first issue Classic
argues that, by demanding that Classic close on the lots in Phase Five without
the improvements required by the contract and by sending a notice of default
when the property was no more than unfinished lots, Deer Creek breached the
contract first.  Therefore, Classic
argues, Deer Creek cannot rely upon any acts of Classic that occurred after
this initial breach by Deer Creek as grounds for summary judgment.    

Generally, when one party to
a contract commits a material breach, the other party is discharged or excused
from further performance. Mustang Pipeline Co., Inc. v. Driver Pipeline Co.,
Inc., 134 S.W.3d 195, 196 (Tex. 2004). The non‑breaching party must
elect between two courses of action, either continuing performance or ceasing
performance.  Gupta v. Eastern Idaho
Tumor Inst., Inc., 140 S.W.3d 747, 756 (Tex. App.CHouston [14th Dist.] 2004, pet. denied).  If the non‑breaching party elects to
treat the contract as continuing and insists the party in default continue
performance, the previous breach constitutes no excuse for nonperformance on
the part of the party not in default and the contract continues in force for
the benefit of both parties.  Id.  Thus, treating a contract as continuingCafter a breachCdeprives the
non‑breaching party of any excuse for terminating its own performance.  Id. at 757. 








Although the non‑breaching
party must elect between continuing or ceasing performance, the election does
not affect whether the non‑breaching party can sue for a former or future
breach.  Cal‑Tex Lumber Co.,
Inc. v. Owens Handle Co., Inc., 989 S.W.2d 802, 812 (Tex. App.CTyler 1999, no pet.).  The
election affects only whether the non‑breaching party itself is then
required to perform fully.  Gupta,
140 S.W.3d at 757 n.7. If the non-breaching party continues performance, it
obligates itself to fully perform.  Id.  

Deer Creek responds to
Classic=s argument (that it was Deer Creek who first breached the contract) by
asserting that, even assuming Deer Creek breached first, Classic had the choice
of either continuing performance or ceasing performance.  And, Deer Creek argues, Classic elected to
treat the contract as continuing; thus, the alleged prior breach can no longer
constitute an excuse for nonperformance. 
Therefore, Deer Creek argues, when Classic thereafter recorded the
contract the contract in the deed records, it then breached the continuing
contract, as the result of which, the contract terminated by its own terms and
Deer Creek was free to sell the property. 
We agree.  








Even assuming that Deer Creek
breached the contract by failing to deliver the lots in Phase Five, Classic was
put to an election of either continuing performance or ceasing
performance.  Gupta, 140 S.W.3d at
756.  Classic has maintained all along
and even in its brief to this court that A[a]t all times, Classic repeatedly advised Deer Creek of Classic=s intention to enforce@ the contract.  Given this
posture, Classic cannot use the alleged previous breach by Deer Creek as excuse
for its own subsequent breach.  Id.  We hold that when Classic recorded the
contract in the deed records, Classic terminated the contract.  Deer Creek was then free to file affidavits
affirming the contract had been terminated and free to sell the lots to other
purchasers.  We hold that the trial court
did not err in granting summary judgment in favor of Deer Creek based on
Classic=s breach of the contract.  We
overrule Classic=s first
issue.

C.     Paragraph 21 and Public Policy

In its second issue, Classic
argues that Paragraph 21Cwhich
terminates the contract if Classic records the contract of public recordCis void as a matter of public policy because Classic could not have an
adequate remedy under Texas law if it were contractually prevented from filing
a lawsuit, and recording the contract in relation to that lawsuit, in order to
enforce its right of specific performance. 









Texas courts have long
recognized Texas= strong
public policy in favor of preserving the freedom of contract.  Fairfield Ins. Co. v. Stephens Martin
Paving, LP, 246 S.W.3d 653, 664 (Tex. 2008). Texas courts also
recognize the importance of the Aindispensable partner@ to the freedom of contractCcontract enforcement.  Id.  Freedom of contract is not unbounded.  Id. 
As a general rule, parties have the right to contract as they see fit as
long as their agreement does not violate the law or public policy.  Id. 
Pertinent to this case, where a valid contract prescribes particular
remedies or imposes particular obligations, equity generally must yield unless
the contract violates positive law or offends public policy.  Fortis Benefits v. Cantu, 234 S.W.3d
642, 648B49 (Tex. 2007).  Texas= public policy is embodied in its constitution, statutes, and judicial
decisions.  Texas Commerce Bank, N.A.
v. Grizzle, 96 S.W.3d 240, 250 (Tex. 2002). 
Without clear legislative intent to prohibit agreements, and absent any
claim of fraud, duress, accident, mistake, or failure or inadequacy of
consideration, Texas courts generally decline to declare contractual agreements
void on public policy grounds.  Fairfield, 246 S.W.3d at 664. 








Classic contends that, in
order to exercise the remedy of specific performance and to protect its
property rights under the contract, it had to file two suits for specific
enforcement of the contract and also file two notices of Lis Pendens to
put the public on notice of litigation concerning the property at issue.  Classic reasons that because it had to file a
lawsuit to enforce its rights of specific performance, it was required by the
best evidence rule to prove the contents of the writing by publicly filing the
contract.  Therefore, Classic argues,
paragraph 21 violates Texas Rules of Evidence in that paragraph 21 of the
contract prevents Classic from attaching to its lawsuit the best obtainable
evidence of the contracts contentsCthe contract itself.  

Deer Creek counters that
Classic=s argument is disingenuous because Texas Rules of Evidence do not
require a filing of the contract with its petition and, regardless of what the
Texas Rules of Evidence dictate, Classic recorded the contract in the county
deed records prior to filing its lawsuit.  Further, Deer Creek argues, Classic had the
option of filing a lawsuit and having the contract evaluated in camera,
therefore still allowing Classic to seek specific performance without violating
paragraph 21 of the contract.  We agree
with Deer Creek. 








Nothing in the Texas Rules of
Evidence requires the public recording of documents like Classic did
when it filed the contract in the Tarrant County deed records without Deer
Creek=s permission in violation of paragraph 21 of the contract.  See Tex.
R. Evid. 1002.  Furthermore,
Classic could have, as Deer Creek argues, maintained the confidentiality of the
contract without publicly filing the contract and still sought remedy in court
by either seeking an in camera inspection of the contract or having the
trial court place the contract under seal. 
See In re Dalco, 186 S.W.3d 660, 664 (Tex. App.CBeaumont, 2006, orig. proceeding, mand. denied) (conducting in
camera review of employment contracts); see also Tex. R. Civ. P. 76a.  Finally, we note that Deer Creek=s stated ground in its motion for summary judgment was the recording
of the contract in the deed records, not the filing of a copy of it with the
petition or notice of Lis Pendens. 
We overrule Classic=s second issue.   

 

 

D.     No Genuine Issues of Material Fact Exist

In its third issue, Classic
argues that there are genuine issues of material fact concerning whether
Classic failed to comply with the contract. 
Specifically, Classic contends that fact questions remain concerning:
(1) whether Deer Creek breached the contract when it demanded Classic close on
alleged incomplete lots; (2) whether Deer Creek was the first to breach the
contract; (3) whether Deer Creek made a valid tender under the contract prior
to its attempts to terminate the contract; (4) whether Deer Creek forced
Classic into recording the contract by sending a letter that the contract had
been terminated; (5) whether Deer Creek negotiated sales of the properties in
question while assuring Classic that it would honor the contract; and (6)
whether paragraph 21 is enforceable as a matter of law.  We are unpersuaded that any of these create a
genuine issue of material fact.








We have already held that,
even assuming Deer Creek breached prior to Classic=s recording of the contract publically in violation of paragraph 21,
Classic cannot use the previous breach by Deer Creek as an excuse for its own
breach after electing to continue the contract. 
This disposes of what Classic contends are fact questions as to (1)
through (4) listed above.  The above
numbered (5) potential fact question is disposed of because we have already
held that once Classic recorded the contract in violation of paragraph 21, Deer
Creek was no longer bound by the contract and free to sell the properties to
other potential buyers.  And the above
numbered (6) is a question of law that we have already disposed of by
overruling Classic=s second
issue.  We therefore overrule Classic=s third issue. 

E.     Appellees Alliance and Kenmark

In its fourth issue, Classic
argues that Alliance and Kenmark were not entitled to summary judgment
concerning Classic=s claim that
those parties tortiously interfered with the existing contract by purchasing
lots covered by the contract. 








The elements of tortious
interference with a contract are: (1) the existence of a contract subject to
interference; (2) willful and intentional interference; (3) interference that
proximately caused damage; and (4) actual damage or loss.  ACS Investors, Inc. v. McLaughlin, 943
S.W.2d 426, 430 (Tex. 1997).   A party to
a contract has a cause of action for tortious interference against a third
person who wrongly induces another contracting party to breach the contract.  Holloway v. Skinner, 898 S.W.2d 793, 794
(Tex. 1995).

In this case, it was Classic
that breached the contract.  As stated
earlier, even assuming that Deer Creek=s previous sending of letters to Classic that the contract was
terminated constituted a breach, Classic elected to continue under the
contract.  See Gupta, 140
S.W.3d at 756.  Once Classic elected to
continue with the contract, Classic was not excused from its own duties.  By filing the contract in the deed records a
second time after continuing the contract, Classic terminated the contract by
the terms of paragraph 21.  As a matter
of law, once the contract terminated, there was no longer an existing contract
with which Alliance and Kenmark could interfere by later purchasing the lots.  See Ice Bros., Inc. v. Bannowsky, 840
S.W.2d 57, 63 (Tex. App.CEl Paso
1992, no writ) (holding once oil and gas lease terminated for lack of
production, there was no longer a contractual relationship with which appellant
could tortiously interfere).     

For the foregoing reasons,
the trial court correctly granted summary judgment in favor of Alliance and
Kenmark as to Classic=s claim for
tortious interference with an existing contract.  We overrule Classic=s fourth issue.

IV.    Conclusion

Having overruled all of
Classic=s issues, we affirm the trial court=s judgment.    








 

 

ANNE GARDNER

JUSTICE

 

PANEL:      GARDNER, WALKER, and MCCOY,JJ.

 

WALKER,
J. concurs without opinion.

 

DELIVERED:  August 14, 2008











[1]See Tex. R. App. P. 47.4.





[2] Deer
Creek=s
president Alton Isbell, who is not a party to this appeal, was also added to
the underlying suit in Classic=s third amended petition.
Classic sued Isbell for fraud in connection with the contract that is at issue
in this appeal.  The trial court severed
Classic=s
claim against Isbell as well as counterclaims by Appellees.  





[3]Paragraph
13 of the contract provided that, upon default by Deer Creek, Classic could
either terminate the contract and receive return of the note previously
deposited or seek specific performance Aas its sole and exclusive
remedy, [Classic] hereby waiving any right to seek damages from [Deer Creek]
for any breach of the terms of this contract.@